MADSEN, J.
*1183 *588 ¶ 1 This case addresses the adequacy of the parole remedy available under ROW 9.94A.730, the Miller[1] "fix" statute. Consistent with the Supreme Court's decision in Montgomery v. Louisiana, --- U.S. ----, 136 S.Ct. 718, 193 L.Ed. 2d 599 (2016), we hold that RCW 9.94A.730 's parole provision is an adequate remedy for a Miller violation, rendering unnecessary the resentencing of a defendant who long ago received a de facto life sentence as a juvenile.
FACTS
¶ 2 Jai'Mar Scott was convicted by a jury in 1990 of first degree premeditated murder for killing his neighbor, a 78-year-old-woman who suffered from Alzheimer's disease. See State v. Scott, 72 Wash. App. 207, 210, 866 P.2d 1258 (1993), aff'd sub nom. State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995). Scott was 17 years old when he committed the murder. The juvenile court declined jurisdiction, and Scott was tried, convicted, and sentenced as an adult.
¶ 3 At sentencing, the parties agreed that the standard range was 240 to 320 months, with 240 months being the *589 mandatory minimum sentence that could be imposed. The State requested an exceptional sentence above the standard range. The defense requested the low end of the standard range. The trial court sentenced Scott to an exceptional sentence of 900 months based on four independent findings: (1) that Scott's conduct constituted deliberate cruelty, (2) that his conduct was an abuse of trust, (3) that the crime involved multiple injuries, and (4) that the victim was particularly vulnerable.
¶ 4 On direct appeal, the Court of Appeals held that the 900-month sentence imposed was not clearly excessive because the "aggravating factors are both numerous and individually and collectively egregious." Id. at 222, 866 P.2d 1258. The Court of Appeals also rejected Scott's assertion that his exceptional sentence was improper in light of his youth at the time of the crime. This court affirmed in Ritchie, 126 Wash.2d at 399, 894 P.2d 1308, which held that the sentencing court had properly relied on "four horrid aggravating factors" in imposing the 900-month sentence.
¶ 5 As Scott served his sentence, the law of juvenile sentencing changed dramatically, and in 2012 the Supreme Court decided Miller, 567 U.S. at 465, 132 S.Ct. 2455, which held that a sentence imposed on a juvenile of mandatory life without parole violates the prohibition on cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Following Miller, this court, in State v. O'Dell, 183 Wash.2d 680, 696, 358 P.3d 359 (2015), held that a trial court must be allowed to consider youth as a mitigating factor when imposing a sentence on a person who was barely 18 years old at the time of his crime. Two months later, Division One held, in State v. Ronquillo, 190 Wash. App. 765, 774-77, 361 P.3d 779 (2015), that Miller applied to juveniles receiving aggregate sentences that resulted in the *590 equivalent of life without parole, that is, de facto life sentences.[2]
¶ 6 In May 2016, Scott filed a motion for relief from judgment requesting a new sentencing hearing. The State asked the superior court to transfer the untimely motion to *1184 the Court of Appeals for consideration as a personal restraint petition (PRP) pursuant to CrR 7.8. The court denied the State's motion and granted Scott's motion for relief from judgment. The State appealed.
¶ 7 The Court of Appeals reversed the trial court's grant of a new sentencing hearing, finding, "The constitutional violation identified in the Miller line of cases is the failure to allow a juvenile offender the opportunity for release when his or her crime was the result of youthful traits." State v. Scott, 196 Wash. App. 961, 971, 385 P.3d 783 (2016). The Court of Appeals concluded, "In Montgomery, the Supreme Court expressly approved of statutes that provide the opportunity for parole as remedies for a Miller violation." Id. The Court of Appeals concluded that due to the enactment of "Washington's Miller fix statute," RCW 9.94A.730,[3] "Scott is no longer serving a sentence that is the equivalent of life without parole. As such, Miller is not a significant change in law that is material to his sentence." Id. at 972, 385 P.3d 783. Scott sought review, which this court granted. State v. Scott, 188 Wash.2d 1001, 393 P.3d 362 (2017).
*591 ANALYSIS
Standard of Review
¶ 8 Constitutional interpretation is a question of law reviewed de novo. State v. MacDonald, 183 Wash.2d 1, 8, 346 P.3d 748 (2015). Questions of statutory interpretation are also reviewed de novo. State v. Bunker, 169 Wash.2d 571, 577, 238 P.3d 487 (2010).
¶ 9 A collateral attack on a sentence generally must be brought within one year after the judgment and sentence become final. RCW 10.73.090(1), (2). A collateral attack[4] filed more than one year after the underlying judgment will not be considered time barred by RCW 10.73.090 when it is based on a retroactively applicable "significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered." RCW 10.73.100(6). Here, there is no dispute that Miller constituted a retroactively applicable, significant change in the law. See Scott , 196 Wash. App. at 965, 385 P.3d 783. Nevertheless, the Court of Appeals held that RCW 10.73.100(6) did not apply because Miller was not "material" to Scott's unconstitutional sentence and thus, Scott's motion for resentencing was time barred. Id. at 972, 385 P.3d 783.
¶ 10 This court has previously explained:
While litigants have a duty to raise available arguments in a timely fashion and may later be procedurally penalized for failing to do so, ... they should not be faulted for having omitted arguments that were essentially unavailable at the time, as occurred here. We hold that where an intervening opinion has effectively overturned a prior appellate decision that was originally determinative of a material issue, the intervening opinion constitutes a "significant change in the law" for purposes of exemption from procedural bars.
*592 In re Pers. Restraint of Greening, 141 Wash.2d 687, 697, 9 P.3d 206 (2000) (footnote omitted). Further, in In re Personal Restraint of Thomas, 180 Wash.2d 951, 953, 330 P.3d 158 (2014), we dismissed a PRP as mixed, but acknowledged, "We recognize that Thomas's claim premised on Miller may not be time barred; if we agreed with Thomas that the rule in Miller applies retroactively, then that claim satisfies the exception to the one-year time bar in RCW 10.73.100(6) and we could reach its merits."
*1185 ¶ 11 The Supreme Court has recently declared in Montgomery that Miller applies retroactively. Nevertheless, as discussed infra, Montgomery also identifies an adequate remedy for a Miller violation in the form of providing a parole opportunity for juvenile defendants. 136 S.Ct. at 736. Consequently, because an adequate remedy is available to Scott, this court cannot grant him the collateral relief (via a PRP) that he seeks. See RAP 16.4(d) ("The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances."). Accordingly, we hold that the collateral relief Scott seeks (i.e., resentencing) is unavailable because he has an adequate remedy, which is to seek parole under RCW 9.94A.730.
¶ 12 Scott and amici[5] contend that in light of the Miller violation here, the appropriate remedy is to remand for resentencing and an individualized consideration of youth. We reject the contentions that resentencing is warranted.
¶ 13 In Miller, the Supreme Court observed, "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " 567 U.S. at 469, 132 S.Ct. 2455 (quoting Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed. 2d 1 (2005) ). Accordingly, justice requires that " 'punishment *593 for crime should be [appropriately] graduated and proportioned' to both the offender and the offense." Id. (internal quotation marks omitted) (quoting Roper, 543 U.S. at 560, 125 S.Ct. 1183 ). In other words, " '[t]he concept of proportionality is central to the Eighth Amendment.' " Id. (alteration in original) (quoting Graham v. Florida, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L.Ed. 2d 825 (2010) ). And that concept is viewed "less through a historical prism than according to 'the evolving standards of decency that mark the progress of a maturing society.' " Id. at 469-70, 132 S.Ct. 2455 (internal quotation marks omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976) ). The Court in Miller built on its prior decisions in Roper and Graham[6] in concluding that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." Id. at 470, 132 S.Ct. 2455.
¶ 14 In Miller, the Court was considering "the constitutionality of mandatory sentencing schemes-which by definition remove a [sentencing] judge's ... discretion." Id. at 483 n.10, 132 S.Ct. 2455. The Court explained, "Our decision does not categorically bar a penalty for a class of offenders or type of crime .... Instead, it mandates only that a sentencer follow a certain process-considering an offender's youth and attendant characteristics-before imposing a particular penalty." Id. at 483, 132 S.Ct. 2455 (emphasis added).
¶ 15 While Miller held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," the Court reiterated that " '[a] State is not required to guarantee eventual freedom,' but must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. ' " Id. at 479, 132 S.Ct. 2455 (emphasis added) (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011 ).
*594 ¶ 16 The Court's discussion in Miller, which rejected the State's argument that sufficient discretion is exercised in the course of the juvenile transfer decision, is instructive here. The Court explained as follows:
[T]he question at transfer hearings may differ dramatically from the issue at a post-trial sentencing. Because many juvenile systems require that the offender be released at a particular age or after a certain number of years, transfer decisions often present a choice between extremes:
*1186 light punishment as a child or standard sentencing as an adult (here, life without parole). In many States, for example, a child convicted in juvenile court must be released from custody by the age of 21. Discretionary sentencing in adult court would provide different options: There, a judge or jury could choose, rather than a life-without-parole sentence, a lifetime prison term with the possibility of parole or a lengthy term of years. It is easy to imagine a judge deciding that a minor deserves a (much) harsher sentence than he would receive in juvenile court, while still not thinking life-without-parole appropriate. For that reason, the discretion available to a judge at the transfer stage cannot substitute for discretion at post-trial sentencing in adult court-and so cannot satisfy the Eighth Amendment.
Id. at 488-89, 132 S.Ct. 2455 (emphasis added) (citations omitted). Notably, the circumstance that the Miller court cites with approval in the above passage is precisely the circumstance Scott finds himself in by operation of the Miller fix statute in this case-he has a de facto lifetime prison term with the possibility of parole. This meets Miller 's requirement that the State provide " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " Id. at 479, 132 S.Ct. 2455 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011 ).
¶ 17 Scott argues that this court's recent decision in State v. Houston-Sconiers, 188 Wash.2d 1, 20, 391 P.3d 409 (2017), supports resentencing in his case. We disagree. Applying Miller, this court held that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA [ (Sentencing Reform Act of 1981, ch. 9.94A
*595 RCW) ] range and/or sentence enhancements." Id. at 21, 391 P.3d 409 (emphasis added). This court explained in Houston-Sconiers, "Critically, the Eighth Amendment requires trial courts to exercise this discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line." Id. at 20, 391 P.3d 409 (emphasis added). In Houston-Sconiers, this court was addressing the appeal of a juvenile offender's sentence that was not yet final. The Houston-Sconiers court acknowledged that the Supreme Court had approved a postsentencing Miller fix of extending parole eligibility to juveniles as a remedy where an offending juvenile conviction and sentence are "long final."[7] Id. at 20, 391 P.3d 409 (citing Montgomery, 136 S.Ct. at 736 ).
¶ 18 Further, as noted, Montgomery held that Miller announced a new substantive rule of constitutional law that is "retroactive in cases on collateral review." 136 S.Ct. at 732. The Montgomery Court acknowledged that " Miller held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " Id. at 726 (internal quotation marks omitted) (quoting Miller, 567 U.S. at 465, 132 S.Ct. 2455 ). The Montgomery Court stated:
Miller required that sentencing courts consider a child's "diminished culpability and heightened capacity for change" before condemning him or her to die in prison. Although Miller did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect " 'irreparable corruption.' "
*596 Id. at 726 (emphasis added) (citation omitted) (quoting Miller, 567 U.S. at 479-80, 132 S.Ct. 2455 (quoting Roper, 543 U.S. at 573, 125 S.Ct. 1183 ) ). The Montgomery Court explained
Miller, it is true, did not bar a punishment for all juvenile offenders, ... Miller did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility. ... Before Miller, every juvenile convicted of a homicide offense could be *1187 sentenced to life without parole. After Miller, it will be the rare juvenile offender who can receive that same sentence. ... Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption.
Id. at 734. The Montgomery Court explained that procedurally, " Miller requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." Id. (emphasis added). Such a hearing "where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." Id. at 735 (quoting Miller, 567 U.S. at 465, 132 S.Ct. 2455 ).
¶ 19 The Montgomery Court observed, " Miller's conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution." Id. at 736. While acknowledging the potential scope of the Court's retroactive application of Miller, the Montgomery Court proceeded to explain the appropriate remedy, stating:
Giving Miller retroactive effect... does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, e.g., Wyo. Stat. Ann. § 6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 *597 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of Miller's central intuition-that children who commit even heinous crimes are capable of change.
Id. at 736 (emphasis added). Thus, Montgomery provides that the Washington Miller fix statute's parole provision cures the Miller violation in Scott's case. Accordingly, as discussed above, under Miller, Montgomery, Houston-Sconiers, and State v. Ramos, 187 Wash.2d 420, 387 P.3d 650, cert. denied, --- U.S. ----, 138 S. Ct. 467, 199 L.Ed.2d 355 (2017), remand for resentencing is not required by the Eighth Amendment in this case.
¶ 20 Nevertheless, Scott argues that the Wyoming statute approved in Montgomery is distinguishable. But while the Wyoming and Washington Miller fix statutes are not identical, they do not differ in any substantive way relevant to the present inquiry. Both provide a parole avenue to juvenile offender inmates after a set period of time. Notably, the Washington statute, RCW 9.94A.730, provides more advantages to the inmate by providing a right to petition for early release after serving 20 years (5 years earlier than under the Wyoming statute) and provides the petitioner with a presumption of early release (Wyoming's Miller fix statute has no such presumption).See RCW 9.94A.730(1), (3) ; WYO. STAT. ANN. § 6-10-301.
¶ 21 Scott and amicus also complain that while RCW 9.94A.730 provides for parole eligibility, it does not provide for consideration of a defendant's diminished capacity due to attributes of youth. First, the Wyoming statute that Montgomery expressly approved also lacks the considerations that *598 Scott complains are missing. See WYO. STAT. ANN. § 6-10-301. Second, Montgomery expressly approved the extension of "parole eligibility" to juvenile offenders as sufficient to address a Miller violation on collateral review, precisely as RCW 9.94A.730 provides. 136 S.Ct. at 736. Third, while Miller requires that at the sentencing of a juvenile, the court must consider the juvenile's youth before imposing a sentence, Miller also acknowledged that the State "must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *1188 567 U.S. at 479, 132 S.Ct. 2455 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011 ). Here, RCW 9.94A.730 does so.
¶ 22 We note that contemporaneously with Scott's present collateral attack he petitioned the Department of Corrections Indeterminate Sentencing Review Board (ISRB) for early release under RCW 9.94A.730.[8] Although the ISRB decision does not expressly focus on Scott's diminished culpability based on his juvenile status at the time of the crime, the transcript of the ISRB hearing establishes that the ISRB specifically inquired of Scott about his circumstances, environment, and mind set at the time of the crime, and how and to what extent he had matured into a different person by the time of the parole hearing.[9] Taken *599 together, the ISRB transcript and decision[10] show that the ISRB did consider Scott's youth at the time of the crime and how he purportedly has changed since that time, but the ISRB was persuaded by other evidence (i.e., the psychologist's evaluation) that Scott should not yet be released.
¶ 23 Scott and amicus next contend that the passage in Montgomery approving parole eligibility as a Miller violation fix is merely dicta and not precedential. In State v. Williams-Bey, a Connecticut appellate court addressed and persuasively rejected the same argument as follows:
We first address the defendant's claim that the United States Supreme Court's statement that parole eligibility will remedy a Miller violation is dicta .... We are not persuaded.
Black's Law Dictionary (9th Ed. 2009) defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential ...." Dicta of the United States Supreme Court, however, is persuasive authority. See United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir.) ("carefully considered language of the [United States] Supreme Court, even if technically dictum, generally must be treated as authoritative" [internal quotation marks omitted] ), cert. denied, 549 U.S. 1055, 127 S.Ct. 691, 166 L.Ed. 2d 518 (2006). This is especially so in this case, in which we consider a federal constitutional claim.
It is true that the Supreme Court granted certiorari in Montgomery to determine only whether the court had jurisdiction over the defendant's claim and whether Miller applied *600 retroactively. Montgomery v. Louisiana, supra, 136 S.Ct. at 725, 727. The court, though, had to have recognized that Miller 's retroactive application would potentially affect thousands of cases across several states and that the logical extension of its holding would require state legislatures *1189 and courts to fashion a constitutionally adequate remedy for sentences that violated Miller. It thus is illogical to categorize Montgomery 's conclusion that Miller applies retroactively as the holding of the court, but its pronouncement of a constitutionally adequate remedy in light of Miller 's retroactive application as not being germane to that holding, and, thus, mere dicta. We do not believe that the United States Supreme Court would so glibly identify a constitutionally adequate remedy under the eighth amendment. Moreover, as noted, the court in Montgomery stated unequivocally that "[a] State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Montgomery v. Louisiana, supra, 736. The court could hardly have been clearer. We conclude that parole eligibility is an adequate remedy for sentences that violated Miller as applied retroactively.
167 Conn. App. 744, 764-65, 144 A.3d 467 (2016) (most alterations in original) (citations omitted). We agree.
¶ 24 Finally, Scott raises a new argument in his supplemental brief, asserting that the Court of Appeals decision conflicts with State v. Fain, 94 Wash.2d 387, 617 P.2d 720 (1980). Fain is distinguishable. In Fain, the defendant had written unauthorized checks, depriving his victims of a total of less than $407, but as an habitual offender he received a life sentence. Id. at 401, 617 P.2d 720. This court held that the defendant's life sentence as an habitual offender was disproportionate under the Washington Constitution. Id. at 402, 617 P.2d 720. Fain is simply too different to have any impact on the present case. It was decided on state constitutional grounds, but here the state constitution has not been asserted. The Fain court noted particularly that any parole possibility in that case was highly speculative, see id. at 394-95, 617 P.2d 720, but here RCW 9.94A.730 provides a specific right to petition and a presumption of early release, and imposes a standard for the *601 ISRB to apply. See RCW 9.94A.730(3). And finally, this case concerns a Miller violation of the Eighth Amendment. "The United States Supreme Court is the ultimate authority on the requirements of the federal constitution, and has emphasized that parole eligibility is a constitutionally adequate remedy for sentences that violate Miller in light of that case's retroactive application." Williams-Bey, 167 Conn. App. at 767-68, 144 A.3d 467.
CONCLUSION
¶ 25 The Court of Appeals reversal of the trial court order granting a new sentencing hearing is affirmed because Scott has an adequate remedy as directed by the Supreme Court in Montgomery -he may seek early release under RCW 9.94A.730. Because he has an adequate remedy, collateral relief via a personal restraint petition is not available under RAP 16.4(d). Accordingly, we affirm the reversal of the trial court's order.
WE CONCUR:
Johnson, J.
Owens, J.
Stephens, J.
Wiggins, J.
Yu, J.

Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012).

This court recently also held that Miller applies to juvenile homicide offenders facing de facto life-without-parole sentences in State v. Ramos, 187 Wash.2d 420, 436, 387 P.3d 650, cert. denied, --- U.S. ----, 138 S. Ct. 467, 199 L.Ed.2d 355 (2017).

In 2014, the legislature enacted " 'Miller fix' " statutes "with the intention of bringing Washington's sentencing framework into conformity with Miller. " Ronquillo, 190 Wash. App. at 777-78, 361 P.3d 779 (citing RCW 9.94A.730 ; Laws of 2014, ch. 130 (effective June 1, 2014) ). RCW 9.94A.730, in relevant part, provides that a juvenile offender may petition the Department of Corrections Indeterminate Sentencing Review Board (ISRB) for early release after serving no less than 20 years of total confinement. RCW 9.94A.730(1). An offender may not petition for early release if he has been convicted of a crime committed after his 18th birthday or has committed a disqualifying infraction in the previous 12 months. Id. Such qualifying petitioner is presumptively eligible for early release. RCW 9.94A.730(3). A person denied release by the ISRB may repetition five years after the date of denial or at an earlier date as may be set by the ISRB. RCW 9.94A.730(6).

An untimely motion for relief from judgment filed in the trial court "shall" be transferred to the Court of Appeals for consideration as a PRP. CrR 7.8(c)(2).

One amicus brief was submitted on behalf of the following: The American Civil Liberties Union of Washington, Columbia Legal Services, Juvenile Law Center, National Juvenile Defender Center, TeamChild, Washington Association of Criminal Defense Lawyers, and Washington Defender Association.

The Court explained that Roper held that "the Eighth Amendment bars capital punishment for children," and Graham held that the Eighth Amendment also "prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense." Miller, 567 U.S. at 470, 132 S.Ct. 2455.

Similarly, in Ramos, 187 Wash.2d at 436, 387 P.3d 650, this court stated:
We acknowledge that the Supreme Court has held that for cases on collateral review, life-without-parole sentences previously imposed without proper Miller hearings may be remedied "by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Montgomery, 136 S.Ct. at 736. However, this case is before us on direct appeal.

We grant the State's motion to supplement the record to include the transcript and ISRB decision for Scott's parole hearing under RAP 9.10, which provides, in part:
If the record is not sufficiently complete to permit a decision on the merits of the issues presented for review, the appellate court may, on its own initiative or on the motion of a party (1) direct the transmittal of additional clerk's papers and exhibits or administrative records and exhibits certified by the administrative agency, or (2) correct, or direct the supplementation or correction of, the report of proceedings.

In the course of the hearing, Scott's youth at the time of the crime was discussed, including his lack of appropriate role model at home. Scott described his father as mostly absent and a "thug" who introduced Scott to drugs. ISRB Verbatim Report of Proceedings (Mar. 15, 2016) at 24-25. Scott stated that his extended family blames his mom because she could have raised Scott better. Id. at 26-27. Scott said at age 17, he had no maturity and "didn't know what [he] was doing." Id. at 27, 50. He knew only of gang and street mentality as a youth, and that slapping women and other assaults were "normal," but Scott told the ISRB that now he is someone who takes responsibility. Id. at 24, 51.

The ISRB decision ultimately turned on the evaluation and recommendation of a psychologist that Scott needed sex offender treatment "before any reduction on custody is considered." ISRB Decision & Reasons, No. 970703 (Apr. 26, 2016) at 6. The psychologist recommended that Scott complete sex offender treatment and participate in a cognitive-behaviorally based offender change program. Id. The ISRB determined that Scott was "not releasable," finding that he was more likely than not to commit a new crime if released on conditions. Id. at 1. The ISRB determined that Scott could repetition for release in 2019 "or upon successful completion of" a specified sex offender treatment program and a cognitive-behavioral change program. Id.