**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>JAMES CODY GOODWIN,<br><br>                                Petitioner. | No.  50104-0 –II<br>(consolidated with No. 54307-9-II)<br><br><br>UNPUBLISHED  OPINION |

WORSWICK, J. — James C. Goodwin was convicted of first degree felony murder and taking of a motor vehicle without permission in 1997.  The sentencing court sentenced Goodwin to an exceptional sentence of 480 months.  He was 17 at the time of his crimes, conviction, and sentencing.  Goodwin filed this personal restraint petition after our Supreme Court's decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), and argues that the sentencing court did not properly consider his youth as a potential mitigating factor.  We agree, grant Goodwin's petition, and remand for resentencing.

FACTS

I.  BACKGROUND

James Goodwin was born in August 1979.  He committed his crime in 1996.  The evidence admitted at trial established that Richard Barnacascel, Sr., a 74-year-old man, was beaten to death during a burglary at his home.  *State v. Goodwin*, 93 Wn. App. 1031, No. 21933-6-II, 1998 WL 856582 at *1-*2 (Wash. Ct. App. Dec. 11, 1998).  Goodwin and his codefendant,

Ken Ewing, were in the process of burglarizing the home when Barnacascel returned. *Goodwin*,

1998 WL 856582, at *2. After they ransacked the house, Goodwin and Ewing left in

Barnacascel's car. *Goodwin*, 1998 WL 856582, at *2. On direct appeal, we said:

> Goodwin was arrested and interviewed. He cooperated with police after being informed of his rights and discussed the events surrounding Barnacascel's death. He made a taped statement. He acknowledged: (1) having told Ewing that Barnacascel's home would be a good place to burglarize; (2) having walked with Ewing to Barnacascel's home, going inside, and looking for items to steal; and (3) having heard a car approaching the house and warning Ewing. Ewing told Goodwin to hide, and Goodwin hid in the living room adjoining the kitchen. Ewing hid in the kitchen, behind the only door into the house.

> Goodwin explained that Barnacascel had entered the house and stepped into the kitchen. Ewing beat Barnacascel to death while Goodwin watched. Goodwin helped Ewing pack up stolen items, and the two of them left together in Barnacascel's car. Goodwin and Ewing stopped at Burger King and purchased food with the $4 that Ewing had taken from Barnacascel's pockets. They then drove in Barnacascel's car to Amanda McKinney's home, and later that evening, to the Butcher home in Hoquiam, where they met up with Perron and Christy Butcher.

> . . .

> Goodwin was charged with: murder in the first degree, in violation of RCW 9A.32.030(1)(c), in the course of and in furtherance of robbery and/or burglary in the first degree; and taking a motor vehicle without permission.

> In March 1997, a jury convicted Goodwin on both counts.

*Goodwin*, 1998 WL 856582, at *2.

No. 50104-0-II
Consol. No. 54307-9-II

II. SENTENCING

The court held the sentencing hearing in April 1997.[1] Both parties filed presentence reports. In Goodwin's report, he made no argument that his age should be considered as a mitigating factor, but merely stated, "James Goodwin, is seventeen years of age (he will turn eighteen in August, 1997) and has a substantial standard range in this case." Br. of Resp't, App. 1, at 3. His only arguments were based on his accomplice also being convicted and stating, "This is not an exceptional sentence case." Br. of Resp't, App. 1, at 2.

In its presentence report, the State argued for an exceptional sentence and did not mention Goodwin's age or refer to his youth. The State recommended an exceptional sentence and alluded to findings that Goodwin may not have been a bystander to the physical attack on

---

[1] Neither the State nor the petitioner has been able to locate a transcript or report of proceedings from the sentencing hearing. In its brief, the State explained:

> The State has endeavored to locate a copy of the transcript of the sentencing hearing held on April 21, 1997 (the State does not have one in its file). The court reporter, Constance Chambliss, has since passed away. The State spoke with Sandy Nelson, the owner of Ms. Chambliss's employer, Capitol Pacific Reporting; Capitol Pacific does not have a copy of the transcript in its files. The State has located a Notice of Filing indicating that the transcript of the sentencing hearing was filed with the Grays Harbor County Superior Court Clerk on July 30, 1997. Appendix 4. The clerk's office has searched the physical file in its archives and the State has searched the documents and pleadings scanned into the Odyssey system; the transcript has not been located. Neither has the State found any other written materials, which may have been submitted to the court related to sentencing.

Br. of Resp't at 2.

3

Barnacascel, noting, "He and co-defendant Ewing dispute who actually administered the fatal blows."[2] Br. of Resp't, App. 2, at 4.

The sentencing court sentenced Goodwin to an exceptional sentence of 480 months for the felony murder charge and five months on the taking of a motor vehicle charge, with the sentences to run concurrently. The sentencing court entered findings and conclusions of law on the judgment and sentence. The court found, "The defendant was seventeen years old at the time of the incident. The defendant appears to the Court to be fit and healthy." Br. of Resp't, App. 3, at 8. This was its only reference to Goodwin's age. There is no transcript of the sentencing hearing in the record. The record is silent as to any analysis relating to Goodwin's youth as a factor in the sentencing court's decision. The court explained that either Goodwin and Ewing's "deliberate cruelty" or the victim's advanced age, standing alone, would serve as justification for Goodwin's exceptional sentence. Br. of Resp't, App. 3, at 8.

### III. PROCEDURAL HISTORY

In 1998, Goodwin filed a direct appeal to this court and we affirmed. *Goodwin*, 93 Wn. App. 1031, No. 21933-6-II, 1998 WL 856582. Our Supreme Court denied review. *State v. Goodwin*, 137 Wn.2d 1033 (1999).

In March 2017, following our Supreme Court's decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), Goodwin filed a personal restraint petition (PRP) arguing that under *Houston-Sconiers*, the sentencing court should have considered Goodwin's youth as a

---

[2] Ewing pled guilty to second degree murder. In its presentence report for Goodwin, the State said that at the time of his plea, Ewing told the court that Goodwin administered the fatal blows.

mitigating factor. In August 2017, we stayed Goodwin's petition pending our Supreme Court's decision in *State v. Scott*, 190 Wn.2d 586, 416 P.3d 1182 (2018).[3]

On October 7, 2019, Goodwin filed a CrR 7.8 "Motion to Modify Judgment and Sentence" pro se in Grays Harbor County Superior Court. Pet'r's Br. (No. 54307-9) at 3-8. There, Goodwin also argued that the sentencing court should have examined his youth as a mitigating factor under *Houston-Sconiers*. The superior court transferred Goodwin's motion to us as a PRP under CrR 7.8(c)(2) on October 28.

In September 2020, we consolidated both of Goodwin's PRPs and stayed the case pending our Supreme Court's decisions in *In re Personal Restraint of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020), and *In re Personal Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 474 P.3d 524 (2020).

In November 2020, we lifted the stay and directed the parties to file supplemental briefing addressing *Ali* and *Domingo-Cornelio*. Goodwin filed his supplemental brief in December 2020. As part of his supplemental brief, Goodwin included a declaration that stated: "When I was sentenced in 1997, there was no discussion by counsel or the court regarding any relationship between my brain development and the crime and/or my ability to change as I matured." Pet'r's Supp. Br., App. 1. The State filed a response brief in 2021 that did not refute Goodwin's declaration.

---

[3] In *Scott* our Supreme Court held "that RCW 9.94A.730's parole provision is an adequate remedy for a *Miller* violation, rendering unnecessary the resentencing of a defendant who long ago received a de facto life sentence as a juvenile." 190 Wn.2d at 588.

No. 50104-0-II
Consol. No. 54307-9-II

## ANALYSIS

### I. LEGAL PRINCIPLES

We review questions of constitutional law de novo. *State v. Scott*, 190 Wn.2d 586, 591, 416 P.3d 1182 (2018). We may grant relief for unlawful restraint as specified under RAP 16.4(c). RAP 16.4(a). Under RAP 16.4(c)(4), continued restraint is unlawful if "[t]here has been a significant change in the law, whether substantive or procedural, which is material to the . . . sentence, . . . and sufficient reasons exist to require retroactive application of the changed legal standard."

A petitioner must generally bring a collateral attack on a sentence within one year after the judgment and sentence become final. RCW 10.73.090(1), (2). "A collateral attack filed more than one year after the underlying judgment will not be considered time barred by RCW 10.73.090 when it is based on a retroactively applicable 'significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered.'" *Scott*, 190 Wn.2d at 591 (quoting RCW 10.73.100(6)).

A petitioner alleging constitutional error bears the burden of showing by a preponderance of the evidence that he was actually and substantially prejudiced by the alleged error. *Domingo-Cornelio*, 196 Wn.2d at 267. The petitioner "'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice,' but that the outcome would more likely than not have been different had the alleged error not occurred." *In re Pers. Restraint of Meippen*, 193 Wn.2d, 310, 315-16, 440 P.3d 978 (2019) (quoting *In re Pers. Restraint of Hagler*,

6

97 Wn.2d 818, 825, 650 P.2d 1103 (1982)) (internal quotation marks omitted) (alteration in original).

"We have three options available when reviewing a personal restraint petition: (1) dismiss the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition." *Ali*, 196 Wn.2d at 242 (internal quotation marks omitted). "A reference hearing is appropriate where the petitioner makes the required prima facie showing, but 'the merits of the contentions cannot be determined solely on the record.'" *Ali*, 196 Wn.2d at 243 (quoting *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013)) (internal quotation marks omitted).

The Eighth Amendment to the U.S. Constitution requires trial courts to consider the mitigating qualities of youth regardless of whether the youth is sentenced in juvenile or adult court. *Houston-Sconiers*, 188 Wn.2d at 19-21. "Critically, the Eighth Amendment requires trial courts to exercise this discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line." *Houston-Sconiers*, 188 Wn.2d at 20.

## II. TIMELINESS

As an initial matter, the State argues that Goodwin's collateral attack is time barred because he fails to establish an exception to the one-year deadline to file a PRP after sentencing under RCW 10.73.100(6). In a footnote, the State acknowledges that this argument fails under our Supreme Court's decisions in *Ali* and *Domingo-Cornelio*, but that the State disagrees with our Supreme Court's conclusion. Accordingly, this argument fails.

7

In *Ali*, our Supreme Court held that *Houston-Sconiers* was a significant and material change in the law.  196 Wn.2d 233-35.  Likewise, the *Ali* and *Domingo-Cornelio* courts determined that *Houston-Sconiers*'s requirement that a trial court consider youth was retroactive. *Ali*, 196 Wn.2d at 236; *Domingo-Cornelio*, 196 Wn.2d at 262.

Goodwin was sentenced at age 17 in 1997.  His collateral attack is timely under RCW 10.73.100(6) because it follows *Houston-Sconiers*, which is retroactive.

III.  APPLICATION OF *HOUSTON-SCONIERS*

In his initial petition, as well as in his pro se brief, Goodwin argues that his sentencing court was required to consider his youth when imposing his sentence, that this requirement applies retroactively, and that the possibility of parole does not cure such a constitutional violation.  As explained above, the State's arguments on timeliness and retroactivity fail.[4] *Houston-Sconiers*, 188 Wn.2d at 20; *Ali*, 196 Wn.2d at 236; *Domingo-Cornelio*, 196 Wn.2d at 262.  Additionally, the *Houston-Sconiers* court held that the possibility of parole does not cure a constitutional violation.[5]  188 Wn.2d at 20.  Accordingly, Goodwin prevails on the arguments in his initial petitions.  However, that does not end our analysis.  As noted above, we must determine whether Goodwin was actually and substantially prejudiced by the sentencing court's decision.  *Meippen*, 193 Wn.2d at 315-16.

---

[4] The State does not respond to the arguments in Goodwin's initial petitions.

[5] "Critically, the Eighth Amendment requires trial courts to exercise this discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line."  *Houston-Sconiers*, 188 Wn.2d at 20.

8

## IV. SENTENCING COURT'S CONSIDERATION OF YOUTH

In his supplemental brief, Goodwin argues that the sentencing court failed to consider mitigating factors of youth during his sentencing and that he was prejudiced by the sentencing court's failure to consider those mitigating factors. We agree.

Goodwin must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the constitutional error to obtain relief. *Domingo-Cornelio*, 196 Wn.2d at 267. Where there is no evidence to suggest that the sentencing court considered any mitigating circumstances relating to a petitioner's youth and the only relevant information presented to the court was the petitioner's age at the time of the crimes, then the petitioner has demonstrated such prejudice. *See Domingo-Cornelio*, 196 Wn.2d at 267.

> [A] petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration.
>
> Unless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile under *Houston-Sconiers*.

*Domingo-Cornelio*, 196 Wn.2d at 268.

> As the *Houston-Sconiers* court explained, sentencing courts should have considered:
>
> mitigating circumstances related to the defendant's youth—including age and its 'hallmark features,' such as the juvenile's 'immaturity, impetuosity, and failure to appreciate risks and consequences.' It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and 'the way familial and peer pressures may have affected him [or her].' And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

9

188 Wn.2d at 23 (quoting *Miller v. Alabama*, 567 U.S. 460, 477, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)) (alteration in original).

Here, as in *Domingo-Cornelio*, the only relevant information presented to the sentencing court was Goodwin's age at the time of his crimes. There is nothing in the record that shows the sentencing court considered youth as a mitigating factor. In his presentence report, Goodwin's trial counsel made no argument to the sentencing court that age should be considered as a mitigating factor, but merely stated, "James Goodwin, is seventeen years of age (he will turn eighteen in August, 1997) and has a substantial standard range in this case." Br. of Resp't, App. 1, at 3. In its presentence report, the State argued for an exceptional sentence and did not mention Goodwin's age or refer to his youth.

Likewise, nothing in the sentencing court's findings and conclusions at sentencing show that the court considered youth in any way as a mitigating factor. The court found, "The defendant was seventeen years old at the time of the incident. The defendant appears to the Court to be fit and healthy." Br. of Resp't, App. 3, at 8. This was its only reference to Goodwin's age. There is no transcript of the sentencing hearing in the record, it having been apparently lost in the intervening decades. The record is silent as to any analysis relating to Goodwin's youth as a factor in the sentencing court's decision. Furthermore, Goodwin filed a declaration stating that "there was no discussion by counsel or the court regarding any relationship between my brain development and the crime and/or my ability to change as I matured." Pet'r's Supp. Br., App. 1. This statement is unrefuted.

Thus, there is nothing in the record on appeal that shows the sentencing court in any way considered the "hallmark features" relevant to Goodwin's youth. Accordingly, Goodwin has established actual and substantial prejudice.

The State cites *In re Personal Restraint of Meippen*, 193 Wn.2d at 312-13, to argue that Goodwin fails to demonstrate prejudice. *Meippen* is distinguishable. There, the record showed that the trial court considered the mitigating factors of youth during sentencing.[6] *Meippen*, 193 Wn.2d at 316. Thus, it was possible for our Supreme Court to determine that Meippen was unable to show that his sentence would have changed had the court had the benefit of *Houston-Sconiers*.

From the record before us, Goodwin has established that the trial court never took Goodwin's youth into consideration in any way. Under *Domingo-Cornelio*, this is actual and substantial prejudice.

Furthermore, contrary to the State's argument, there is no guarantee that under the *Domingo-Cornelio* rule a petitioner will receive a shorter sentence on remand. The Eighth Amendment requires that a sentencing court merely consider youth, it does not mandate shorter sentences for youthful defendants. The only requirement is that a petitioner receive a sentencing hearing during which the trial court considers the mitigating circumstances of youth.

---

[6] "At sentencing, Meippen's counsel argued that mitigating qualities of youth—Meippen's age, immaturity, and failure to appreciate the consequences of his actions—supported a sentence at the bottom of the standard range. The trial court considered these mitigating qualities and, nevertheless, imposed a top-end standard range sentence." *Meippen*, 193 Wn.2d at 316.

We hold that Goodwin's sentencing court failed to consider mitigating factors relating to his youthfulness when he was a juvenile tried as an adult. Similar to *Domingo-Cornelio,* we conclude that had the sentencing court had the benefit of *Houston-Sconiers* here, it is more likely than not that the trial court would have imposed a standard range sentence and not an exceptional one. Accordingly, Goodwin was substantially prejudiced. Thus, we grant Goodwin's petition and remand to the trial court for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Glasgow, A.C.J.

Price, J.