**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>GAIL BRASHEAR | No. 85344-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Gail Brashear brings a personal restraint petition (PRP), seeking resentencing. Brashear is on parole serving a 51 year, 2 month sentence for a murder she committed in 1996 at the age of 15. In 2019, the Indeterminate Sentence Review Board (ISRB) released Brashear from custody pursuant to RCW 9.94A.730, and she remains on parole for the remainder of her sentence. As Brashear acknowledges, controlling Supreme Court authority holds that RCW 9.94A.730 provides an adequate remedy for any constitutional infirmity in her sentence, and pursuant to RAP 16.4(d), this forecloses collateral relief. We deny Brashear's PRP.

I

The factual background is set forth in the attachments to Brashear's petition and the State's answer. We also note certain facts reflected in our previous opinion, In re Personal Restraint of Brashear, 6 Wn. App. 2d 279, 430 P.3d 710 (2018).

The affidavit of probable cause indicated that Danny Varnell encountered Brashear on May 11, 1996, when returning home from fishing on the Pilchuck

River. Two witnesses saw a pickup truck with both doors open, three young people present, and the body of an older man "shoved down under the dash board" with the defendant Brashear "half-sitting on him." The youths reported the older man had been shot, and the witnesses urged them to get help at the fire station. The youths departed in the truck, but a quarter mile down the road the witnesses observed the truck stopped and the youths "trying to dispose of something in the woods." Responding deputies found the truck abandoned and Varnell's body nearby. Police located and detained the youths that night. They confessed they had been "camping" in the area for a week, and decided to steal a car. When two of them did not complete an attempt at stealing a car, Brashear took a .380 handgun, stopped Varnell, asked for a ride, and shot him twice. After the witnesses saw them and left, Brashear stabbed Varnell in the neck. At the time of her arrest, Brashear was under investigation for another stabbing and was a suspect in a burglary.

On January 24, 1997, Brashear, at that time 16 years old, pleaded guilty to all three crimes. She agreed the court could consider the affidavit of probable cause to determine whether there was a factual basis for her plea and at sentencing. The State indicated it would recommend an adult sentence of 614 months. Brashear stated she "joins the State's recommendation" and agreed "neither she nor anyone on her behalf shall request anything less."

Sentencing was held on May 7, 1997. The State asked the court to sentence Brashear to "the most the State can recommend within the standard sentencing range," as a "joint recommendation." The State described the plea

2

agreement as being the result of its concern that because of Brashear's age and the involvement of two other defendants, a jury might not convict of aggravated first degree murder, together with Brashear's agreement to acquiesce to the high end sentencing recommendation which, if followed, would mean Brashear would not be released before turning 64 years old. The State described Brashear as "clearly the most culpable person involved."

Two of Varnell's family addressed the court and described the family's grief. Varnell's oldest daughter described Varnell's military service in the Vietnam War, meeting his future wife there, and returning to duty in Vietnam to arrange her and their first child's travel to the United States. They described Varnell as the kind of person who would stop to aid a person in need when Brashear posed as such. They described Varnell's children's efforts to support their mother after his murder.

Brashear's attorney advised the court that she did not have a long criminal history as a juvenile. She had "a window of time of approximately six or eight months" during which she committed "horrible crimes." Brashear did not address the court, but her counsel advised she was remorseful. Brashear's counsel urged the court to "adopt the agreed sentencing recommendation."

The court entered a judgment and sentence. Based on Brashear's guilty plea, she was convicted of first degree murder, first degree assault, and first degree burglary. The murder and burglary convictions included a finding of use of a firearm. The adult standard range for Brashear's murder conviction was 261 to 347 months, the standard range for her burglary conviction was 36 to 48 months, and each carried an additional 60 month firearm enhancement. The assault

3

conviction included a finding of use of a non-firearm deadly weapon, and was subject to a standard range of 93 to 123 months with an additional 24 month deadly weapon enhancement. Adopting the prosecutor's recommendation, the court sentenced Brashear to the high end of the standard range on each count. Consistent with governing law, the court ordered that the 407 month sentence for the murder conviction, the 147 month sentence for the assault conviction, and the 60 month firearm enhancement for the burglary conviction would be served consecutively, resulting in 614 months or 51 years, 2 months of confinement.

In the following years, the U.S. Supreme Court held that "a mandatory life sentence without parole for those under the age of 18 at the time of their crime violates the Eighth Amendment to the United States Constitution." Brashear, 6 Wn. App. 2d at 281 (citing Miller v. Alabama, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L.Ed.2d 407 (2012)). In response, in 2014, the Washington legislature enacted RCW 9.94A.730. Brashear, 6 Wn. App. 2d at 281. Going beyond mandatory life without parole sentences at issue in Miller, and with exceptions not relevant here, RCW 9.94A.730 allows a person convicted of one or more crimes committed before turning 18 to petition the ISRB for early release after serving 20 years of confinement. See Brashear, 6 Wn. App. 2d at 281-82. Early release is presumptive unless the ISRB determines that, despite conditions, it is more likely than not a person will reoffend. Id. at 287.

On April 12, 2017, the ISRB held a hearing on a petition for release filed by Brashear. Id. at 283. The ISRB noted a psychological evaluation indicating Brashear was at low risk to reoffend, and a shift in her behavior starting after 2008.

4

Id. at 284. At that hearing the Snohomish County Prosecutor provided a recommendation opposing release. Id. at 284-85. The ISRB denied release, acknowledging Brashear's good work but desiring to see further progress. Id. at 285. Brashear filed a PRP challenging the ISRB decision. Id. at 285. We reversed, holding the ISRB had failed to apply the statutory presumption of release and had relied on factors that do not guide a release decision under RCW 9.94A.730(3). Id. at 288-90. Our opinion issued December 3, 2018. Id. at 279.

On April 19, 2019, Lisa Robtoy, PsyD, performed a psychological evaluation of Brashear for the ISRB, and later issued a report. The report documented reported difficulties during Brashear's childhood, including her father's infidelity to her mother, associated conflict, alcohol use and abusive behavior by her father, frequent moves and resultant social difficulties, lack of supervision, truancy, sexual assault by a family member, fighting, and introduction to criminal behavior by an older boyfriend. According to Dr. Robtoy, Brashear

> expressed a high amount of remorse related to her instant offense. She became quite tearful at several points during the interview in relation to her crime. For instance, she reported having sought support from mental health after her last [ISRB] hearing, as apparently her case was broadcasted in the news along with information about the victim of her crime. Ms. Brashear expressed pain associated with learning about her victim, as it makes him "even more real" to her and in turn, more difficult to cope with her past behavior. She also discussed understanding why the victim's family might oppose her release, and how her behavior has affected both the victim's family and her family alike.

Brashear had not received an infraction since 2014. Dr. Robtoy opined Brashear's "overall risk level for future offending continues to be low" and she "appears to be a reasonable candidate for transitioning to a less restrictive environment."

5

The ISRB held a hearing in Brashear's case on September 11, 2019, and issued a decision on September 23, 2019. The prosecutor did not provide a recommendation for this hearing. Under RCW 9.94A.730, the ISRB did "not find" by a preponderance that Brashear was likely to commit new criminal law violations if released on conditions, and found her releasable. This was based on several factors, including overall low risk, completion of substantial risk related programming, no serious infractions since 2008, positive behavior, and an extensive release plan. Brashear was then working as a Braille Transcriber with excellent reviews from her supervisors, had extensive support, and anticipated working as a transcriber after release. Brashear "voiced her remorse and appears to have good insight into her offense along with an understanding of the impact of her crimes on the victim's family." Brashear had then served 22 years, 4 months in prison, and 361 days in jail. This left approximately 27 years, 10 months remaining on Brashear's sentence, a period running to the late 2040s.

Brashear represents in her PRP that she "completed three years of 'active supervision' without incident." Thereafter going on "inactive supervision status" formally acknowledged in January 2023, Brashear was instructed, "This means you will not be assigned to/reporting to a field case manager but will still remain under the jurisdiction of the [ISRB]" for "[u]p to the court-imposed term of incarceration." She was advised if she is convicted of a new offense, the ISRB may schedule a violation hearing and return her to prison, and, "[t]here is currently no mechanism for final discharge from this sentence." The State asserts Brashear is "not required to report nor is she subject to any other conditions of community

supervision other than the possibility of a violation hearing if she is convicted of any new offense."

On May 11, 2023, Brashear filed this PRP in the Supreme Court. She asked the Supreme Court to "overturn the 'adequate remedy' ruling" of State v. Scott, 190 Wn.2d 586, 416 P.3d 1182 (2018) and other recent Supreme Court decisions. Brashear asserts that although she has "gained release," she cannot obtain discharge until she has served the maximum term of her sentence, and remains "under several disabilities," which she explains are that she is prohibited from serving as a juror, as a personal representative in a probate matter, and as a trustee. Brashear "challenges her current sentence on state cruel punishment grounds," contending she "continues to serve a constitutionally disproportionate sentence."[1]

Brashear stated in her PRP, "Because only [the Supreme Court] can overturn its precedent, Ms. Brashear urges [the Supreme] Court not to transfer this petition to the Court of Appeals." On May 16, 2023, the Supreme Court transferred Brashear's PRP to this court pursuant to RAP 16.5. On May 23, 2023, this court requested an answer to the PRP. After the State filed an answer and Brashear filed a reply, on October 19, 2023 the court referred the PRP to a panel for determination on the merits pursuant to RAP 16.11(b).

---

[1] Brashear presents no analysis supporting independent state grounds under State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

II

"Granting a PRP is an extraordinary form of relief, so we require the petitioner to 'meet a high standard before this court will disturb an otherwise settled judgment.' " In re Pers. Restraint of Hinton, 1 Wn.3d 317, 324, 525 P.3d 156 (2023) (quoting In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)). A personal restraint petitioner must establish actual and substantial prejudice from an alleged constitutional error, and, in addition, if the petitioner has an adequate remedy available, the court "cannot grant the collateral relief sought," such as resentencing. In re Pers. Restraint of Carrasco, 1 Wn.3d 224, 230-31, 525 P.3d 196 (2023).

In Miller, in two cases, states obtained murder convictions of defendants who were 14 years old at the times of the crimes in 1999 and 2003. 567 U.S. at 466, 469. In both cases, state law required mandatory sentences of life without the possibility of parole. Id. The court discussed the fact "the mandatory penalty schemes at issue here prevent the sentencer from taking account" of those considerations making children "constitutionally different from adults for purposes of sentencing." Id. at 471, 474. The court held, "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Id. at 479. This was because by "making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." Id. The court did not foreclose the possibility of a life without parole sentence for a juvenile offender, but anticipated it would be rare and required that it "take into account how children

8

are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 480.

In Scott, the defendant was convicted in 1990 of committing a murder at the age of 17. 190 Wn.2d at 588. Although the adult standard range sentence was 240 to 320 months, with 240 months being the mandatory minimum, the sentencing court found that several factors supported an exceptional sentence of 900 months. Id. at 588-89. After Miller and other decisions, in 2016 Scott filed a motion seeking a new sentencing hearing. Id. at 590. By then, the legislature had enacted RCW 9.94A.730 and 26 years had elapsed between Scott's 1990 conviction and his motion for resentencing. Id. at 589-90. The court held that under RAP 16.4(d) Scott was barred from obtaining collateral relief because he had "an adequate remedy, which is to seek parole under RCW 9.94A.730." Id. at 592 ("A State may remedy a Miller *violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them*.") (citing Montgomery v. Louisiana, 577 U.S. 190, 212, 136 S. Ct. 718, 736, 193 L. Ed. 2d 599 (2016)). The court explained that in Miller, "the Court reiterated that '[a] State is not required to guarantee eventual freedom,' but must provide '*some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation*.' " Id. at 593 (alteration in original) (quoting Miller, 567 U.S. at 479).

In Washington, going beyond juvenile mandatory life without parole sentences, State v. Houston-Sconiers, 188 Wn.2d 1, 20-21, 391 P.3d 409 (2017), held that under the Eighth Amendment, "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any

9

juvenile defendant, even in the adult criminal justice system." With consecutive firearm enhancements, the 17 and 16 year old defendants in Houston-Sconiers faced approximately 42 to 45 and 37 to 40 years in prison for a series of robberies of mainly candy from children on Halloween. Id. at 8, 10. The Supreme Court explained, "Trial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." Id. at 21 (citing Sentencing Reform Act of 1981, ch. 9.94A RCW (SRA)). "[T]he rule announced by Houston-Sconiers that applies retroactively . . . is the substantive rule that courts may not impose 'certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment.' " Hinton, 1 Wn.3d at 331 (one alteration in original) (quoting In re Pers. Restraint of Ali, 196 Wn.2d 220, 239, 474 P.3d 507 (2020)). A violation of the procedural aspects of Houston-Sconiers does not lead to the conclusion the defendant is serving an unconstitutional sentence. Carrasco, 1 Wn.3d at 237.

In Carrasco, the court extended the adequate remedy holding of Scott beyond assertions of Miller error to assertions of Houston-Sconiers error. 1 Wn.3d at 232. The court acknowledged two cases holding RCW 9.94A.730 did not provide an adequate remedy for 26 and 20 year sentences. Carrasco, 1 Wn.3d at 235 (citing Ali, 196 Wn.2d at 246; In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 269 n.8, 474 P.3d 524 (2020)). The court distinguished Carrasco's 93 year, 10 month, de facto life without parole sentence, for which RCW 9.94A.730 was an adequate remedy. Id. at 227, 235. Again in Hinton the court concluded

RCW 9.94A.730 was an adequate remedy for a juvenile sentenced to an adult mid-range 37 year sentence for a murder committed at the age of 17. 1 Wn.3d at 321-22, 324. In concluding the statute was an adequate remedy, the court explained, "RCW 9.94A.730's remedy applies automatically to all qualifying juvenile offenders originally sentenced to lengthy determinate adult sentences," and provides relief "in the form of an indeterminate sentence with a minimum term of 20 years and a presumption of release." Id. at 333. Hinton held the statute "has created a new sentence that the legislature has designed expressly and exclusively for juvenile offenders," and it "addresses the constitutional problem" that was identified. Id. at 334-35.

Carrasco additionally rejected the argument, advanced by Brashear, that article I, section 14 of the state constitution and State v. Fain, 94 Wn.2d 387, 617 P.2d 720 (1980) require a different result. 1 Wn.3d at 236. Fain acknowledged the constraints of parole, 94 Wn.2d at 394-95, but Carrasco explained it held only "that the opportunity for parole under the particular statute did not convert Fain's life sentence into a less-than-life sentence for purposes of analyzing Fain's proportionality claim under our state constitution," 1 Wn.3d at 236. Carrasco characterized the state constitutional claim as a claim "that article I, section 14 requires a resentencing hearing for juveniles serving long-final exceptionally lengthy sentences imposed without consideration of the dual mandates of *Houston-Sconiers*," but the court concluded "none of our cases support that state constitutional argument." Id. at 236-37.

A decision by the Supreme Court is binding on all lower courts in the state. 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006). The State advances several reasons why Brashear is not entitled to relief,[2] but we reach only the last, that RCW 9.94A.730 provided Brashear an adequate remedy against any unconstitutionally disproportionate sentence. Whether Brashear's claim is viewed as a claim of Miller error or Houston-Sconiers error, Scott, Carrasco and Hinton hold that RCW 9.94A.730 affords adequate relief for any constitutional infirmity, precluding collateral relief pursuant to RAP 16.4(d). We deny Brashear's PRP.

_____
Birk, J.

WE CONCUR:

_____          _____
Feldman, J.                                                    Dwyer, J.

---

[2] The State argues (1) Brashear is not under restraint under RAP 16.4(b) by the remaining disabilities she claims while on inactive supervision status; (2) any restraint is not unlawful, because none of the cited constitutional case law from the U.S. Supreme Court or the state Supreme Court suggests that Brashear's circumstances are substantively an unconstitutional disproportionate sentence for a violent and cruel murder; (3) Brashear fails to show actual and substantial prejudice in light of her agreement not to request a lesser sentence as part of which she avoided a charge of aggravated first degree murder and the associated mandatory sentence of life without parole; (4) Brashear waived her right to request a lesser sentence in her plea agreement; and (5) Brashear may not seek resentencing without voiding her plea agreement. In light of our disposition, we do not reach these arguments.