**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 9, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 9, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 100073-1 |
| | ) | |
| ERIK RAMOS CARRASCO,† | ) | En Banc |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed: <u>March 9, 2023</u> |

JOHNSON, J.—This case concerns the adequacy of the early release statute, RCW 9.94A.730, as a remedy to petitioner's alleged unconstitutional sentence for a crime he committed as a juvenile. This case is guided by *State v. Scott*,[1] where we held that RCW 9.94A.730 was an adequate remedy for a petitioner serving a 75-year sentence imposed without consideration of the mitigating qualities of his youth. Erik Carrasco Ramos is serving a 93-year sentence imposed without any consideration of his youth. He will be eligible to petition for early release under RCW 9.94A.730 after serving 20 years of his sentence. Because *Scott* guides our

---

† Petitioner signs his name as Erik Carrasco Ramos, however, self refers as Carrasco. We will refer to petitioner as Carrasco to reflect this and to reflect court documents.
[1] 190 Wn.2d 586, 416 P.3d 1182 (2018).

*In re the Personal Restraint of Carrasco*, No. 100073-1

analysis, and Carrasco does not propose we overrule *Scott*, we conclude that he has

an adequate remedy under RCW 9.94A.730. Accordingly, we affirm the dismissal

of Carrasco's personal restraint petition (PRP).[2]

FACTS[3] AND PROCEDURAL HISTORY

Carrasco is serving a 1,126-month (93 years, 10 months) sentence for

offenses he committed when he was 17 years old. Carrasco was convicted of

second degree murder, four counts of first degree assault, and second degree

unlawful possession of a firearm. These convictions stem from one incident on

April 28, 2010, in Yakima, Washington.

Carrasco was 17 years old and a member of "La Raza," a Norteño gang in

Yakima. On April 28, 2010, Carrasco visited his friend's house in a territory

claimed by the Norteño gang. As Carrasco and several acquaintances stood in the

front yard, a car carrying five rival Sureño gang members slowly drove by. The

Sureño members yelled out their gang name and some expletives. One passenger

threw a beer can, which hit Carrasco in the head. As the car drove away, Carrasco

shot at the car three times. One bullet struck a passenger in the head and lodged in

---

[2] The Washington Association of Prosecuting Attorneys filed a brief of amicus curiae in support of the State. The Freedom Project of Washington filed an amicus brief in support of Carrasco.

[3] As detailed in *State v. Carrasco*, No. 31298-4-III (Wash. Ct. App. Feb. 3, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/312984.unp.pdf.

*In re the Personal Restraint of Carrasco*, No. 100073-1

another passenger's arm. The passenger who was shot in the head later died from the injury.

Following an automatic decline to adult court and a jury trial, Carrasco was convicted of second degree murder, four counts of first degree assault, and second degree unlawful possession of a firearm. The jury returned special verdicts, finding that Carrasco was armed with a firearm at the time he committed the crimes and that he committed the offenses with two gang-related motive or intent aggravators, supporting an exceptional high sentence under RCW 9.94A.535(3)(aa)[4] and (s).[5]

Carrasco was sentenced in November 2012. His counsel asked the court to use its leniency and discretion to impose the bottom of the range and not impose any additional time for the gang-related aggravating factors. Mot. for Discr. Rev. at App. 15. He requested a sentence of 806 months (67 years, 2 months), which was understood to be the minimum mandatory sentence at the time. Carrasco's counsel did not present evidence of the mitigating qualities of his youth. The State requested a top of the range sentence for each offense and an additional 113 months based on the gang aggravators. The court imposed the top of the standard range for each count, 300 months for the mandatory firearm enhancements, and an

---

[4] "The defendant committed the offense with the intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang as defined in RCW 9.94A.030, its reputation, influence, or membership."

[5] "The defendant committed the offense to obtain or maintain his or her membership or to advance his or her position in the hierarchy of an organization, association, or identifiable group."

*In re the Personal Restraint of Carrasco*, No. 100073-1

additional 100 months for the gang aggravators, all to be served consecutively. Following an unsuccessful direct appeal, Carrasco's judgment and sentence became final in July 2015.

In 2018, Carrasco filed a pro se motion for relief from his judgment and sentence, seeking resentencing based on an Eighth Amendment to the United States Constitution violation, alleging the court failed to consider mitigating factors of his youth at sentencing. He relied primarily on *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), and *State v. Ramos*, 187 Wn.2d 420, 387 P.3d 650 (2017). The trial court transferred the motion to Division Three of the Court of Appeals for consideration as a PRP. The Court of Appeals stayed consideration of the petition pending resolution of *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 440 P.3d 978 (2019), *In re Personal Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 474 P.3d 524 (2020), and *In re Personal Restraint of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020).

In July 2021, the Court of Appeals, Division Three's Acting Chief Judge (ACJ) dismissed Carrasco's petition as frivolous. The ACJ concluded that Carrasco's petition was exempt from the time bar under one of the exceptions set forth in RCW 10.73.100(6) and under *Ali*. *Ali*, 196 Wn.2d 220 (holding *Houston-Sconiers* announced a significant and material change in the law that applies retroactively). The ACJ also determined that Carrasco demonstrated a sentencing

4

error of constitutional magnitude where the sentencing transcript shows the trial court did not acknowledge its ability to consider Carrasco's youthfulness when sentencing. Nevertheless, the judge dismissed the petition because Carrasco failed to establish he suffered actual and substantial prejudice as a result of this error. The ACJ also concluded that the early release statute, RCW 9.94A.730, provides Carrasco an adequate remedy for this sentencing error.

## ANALYSIS

Carrasco was sentenced as an adult for crimes he committed as a child. He seeks collateral review of that sentence through this PRP. Carrasco alleges he is serving an unconstitutional sentence because the sentencing court failed to comply with the dual mandates of *Houston-Sconiers*.[6]

In *Houston-Sconiers*, on direct appeal, we established the Eighth Amendment requires that trial courts consider the mitigating qualities of youth at sentencing and have discretion to impose any sentence below the otherwise applicable SRA[7] range and/or sentence enhancements when sentencing a juvenile in adult court, regardless of how the juvenile got there. 188 Wn.2d at 21. Here, the

---

[6] As this court recently clarified, the substantive rule of *Houston-Sconiers*, prohibiting adult standard Sentencing Reform Act of 1981, ch. 9.94A RCW, ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability, is retroactive. Whereas, "the procedural mandates that require courts to consider mitigating qualities of youth and to have discretion to impose sentences below the SRA are not independently retroactive on collateral review." *In re Pers. Restraint of Williams*, 200 Wn.2d 622, 632, 520 P.3d 933 (2022).

[7] Sentencing Reform Act of 1981, ch. 9.94A RCW.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Court of Appeals concluded that Carrasco demonstrated a sentencing error of constitutional magnitude based on the trial court not considering the mitigating qualities of Carrasco's youth and not appreciating its ability to depart from the SRA and enhancements. It also concluded that Carrasco's petition is exempt from the time bar. The State has not challenged these holdings, and the sole issue before us is whether Carrasco has established grounds for relief in his PRP.

On direct appeal, the defendant needs only to establish the existence of the *Houston-Sconiers* error in order to be entitled to a new sentencing hearing. In the context of a PRP, a petitioner must show they are actually and substantially prejudiced by the constitutional error. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). Even if a personal restraint petitioner successfully establishes they are prejudiced by the constitutional error, the court will grant relief via a PRP only if "other remedies which may be available to petitioner are inadequate under the circumstances." RAP 16.4(d). If Carrasco has an adequate remedy available to him, this court cannot grant the collateral relief sought, i.e., resentencing. Carrasco argues that the possibility of early release under RCW 9.94A.730 is an inadequate remedy under the Eighth Amendment and article I, section 14 of the Washington Constitution.

RCW 9.94A.730 (hereinafter .730) grants criminal defendants sentenced to lengthy terms as juveniles the right to petition the Indeterminate Sentence Review

*In re the Personal Restraint of Carrasco*, No. 100073-1

Board (ISRB) for early release after serving at least 20 years. RCW 9.94A.730(1);

*In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 502 P.3d 349 (2022). The

petitioner benefits from a statutorily mandated presumption of release. The statute

"presumes that a petitioner is releasable and requires the ISRB to determine, by a

preponderance of evidence, that *no* conditions of release could sufficiently mitigate

the petitioner's risk." *Dodge*, 198 Wn.2d at 841 (citing RCW 9.94A.730(3)). "If

the ISRB grants release, the defendant is subject to Department of Corrections

[DOC] community custody for a period of time determined by the ISRB,[8] up to

the length of the court-imposed term of incarceration." *In re Pers. Restraint of*

*Brooks*, 197 Wn.2d 94, 99, 480 P.3d 399 (2021) (citing RCW 9.94A.730(5)).

Our holding today is guided by our decision in *Scott*, 190 Wn.2d 586. In

*Scott*, we concluded .730 provides an adequate remedy under the Eighth

Amendment for a de facto life sentence imposed on a juvenile. In that case, Scott

was serving a long-final 900-month (75 years) sentence that he alleged was

imposed in violation of *Miller*.[9] Under those circumstances, we concluded that

"RCW 9.94A.730's parole provision is an adequate remedy for a *Miller* violation,

rendering unnecessary the resentencing of a defendant who long ago received a de

---

[8] As a matter of policy, these juvenile offenders are under the DOC's active supervision for three years. *Indeterminate Sentence Review Board: Frequently Asked Questions (FAQ)*, WASH. STATE DEP'T OF CORRECTIONS, https://www.doc.wa.gov/corrections/isrb/faq.htm#isrb-inmates (last visited Feb. 28, 2023).

[9] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

7

*In re the Personal Restraint of Carrasco*, No. 100073-1

facto life sentence as a juvenile." *Scott*, 190 Wn.2d at 588. Here, Carrasco, like

Scott, "has a de facto lifetime prison term *with the possibility of parole*" by

operation of .730, thereby meeting *Miller*'s requirement that the State provide

""""some meaningful opportunity to obtain release based on demonstrated maturity

and rehabilitation.""" *Scott*, 190 Wn.2d at 594 (quoting *Miller*, 567 U.S. at 479

(quoting *Graham v. Florida*, 560 U.S. 48, 75, 130 S. Ct. 2011, 176 L. Ed. 2d 825

(2010))). Consistent with *Scott*, we conclude .730 is an adequate remedy for an

alleged *Houston-Sconiers* violation where the petitioner is serving a de facto life

without parole (LWOP) sentence.

Carrasco does not seek to overrule *Scott*. Instead, Carrasco claims that *Scott*

does not apply here because this case involves a *Houston-Sconiers* violation

whereas *Scott* dealt with a *Miller* violation. Therefore, according to Carrasco, the

question of whether .730 is an adequate remedy under the Eighth Amendment for a

*Houston-Sconiers* violation within the context of a de facto life sentence is

undecided. Suppl. Br. of Pet'r at 23. In essence, Carrasco, like the dissent, argues a

*Houston-Sconiers* violation and a *Miller* violation address "materially different

constitutional concerns, which require different remedies" under these

circumstances. Dissent at 5. We disagree and conclude .730 is an adequate remedy

under the circumstances of this case.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Carrasco argues *Scott* is inapplicable here because *Scott* was decided before we held *Houston-Sconiers* was retroactive. In his view, *Ali* made retroactive the dual mandates of *Houston-Sconiers*, i.e., courts must meaningfully consider the mitigating factors of youthfulness and recognize their absolute discretion to impose any sentence below the standard sentencing range. *Ali*, 196 Wn.2d 220. According to Carrasco, he is entitled to resentencing because the sentencing court did not comply with these dual mandates. Thus, in Carrasco's view, it follows that this retroactivity makes *Scott* inapplicable because if Scott's case were heard today, he would also be entitled to resentencing under *Houston-Sconiers*. The dissent makes a similarly erroneous argument. The dissent sua sponte alleges *Scott* is "incorrect," and thus must be overruled, because it was "premised on the now incorrect assumption that the [*Houston-Sconiers*] dual mandates only apply to sentences not yet final on direct review." Dissent at 6, 12. The dissent, like Carrasco, misapprehends the retroactive effect of *Houston-Sconiers*.

In *Scott*, we had no occasion to discuss the dual mandate of *Houston-Sconiers*, but this court has since confirmed that *Houston-Sconiers*' procedural "dual mandates" are not retroactive and therefore do not apply on collateral review to a sentence that is long final. Responding to a similar argument, this court stated, "This characterization of *Houston-Sconiers*' retroactivity is inaccurately broad and

fails to distinguish between the substantive rule and the procedural dual mandates."

*In re Pers. Restraint of Williams*, 200 Wn.2d 622, 631-32, 520 P.3d 933 (2022).

The substantive rule of *Houston-Sconiers*—the Eighth Amendment prohibits imposing adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability—is retroactive and stems directly from the substantive rules of *Miller* and its progeny: "some sentences routinely imposed on adults are disproportionately too harsh when imposed on children who lack adult culpability." *Ali*, 196 Wn.2d at 237.

In arguing that a *Miller* violation and a *Houston-Sconiers* violation "address[] materially different constitutional concerns," the dissent and Carrasco misconstrue the *Houston-Sconiers* protections as broadening the *type* of protections the federal constitution provides to juveniles when it actually broadened the *scope* of the protection. Dissent at 5. A *Houston-Sconiers* violation is an Eighth Amendment violation,[10] and *Houston-Sconiers* did not impose new Eighth Amendment protections. It applied *Miller*'s substantive rule to a broader category of people. *Ali*, 196 Wn.2d at 241-42 ("The difference is one of scope, not of kind."). As confirmed in *Forcha-Williams*,

---

[10] We rooted our *Houston-Sconiers* holding in the Eighth Amendment and explicitly declined to address whether "imposing a lengthy term of years sentence on a juvenile without possibility of discretion violates article I, section 14, of our state constitution." 188 Wn.2d at 21 n.6. In *Ali*, we confirmed that *Houston-Sconiers* was rooted in the Eighth Amendment and *Miller* and its federal progeny. *Ali*, 196 Wn.2d at 237.

> [o]ur decision in *Houston-Sconiers* was an expansion of *Miller*.
> . . . We noted that like *Miller*, *Houston-Sconiers* protects juveniles
> from receiving certain disproportionate sentences; the difference is
> that *Houston-Sconiers* prohibits a broader category of punishments.
> Instead of prohibiting only mandatory life without possibility of
> parole sentences, *Houston-Sconiers* prohibits courts from imposing
> any mandatory adult sentence on juveniles who possess diminished
> culpability. But *Houston-Sconiers* centers on the same substantive
> rule as *Miller*: the Eighth Amendment requires punishment
> proportionate to culpability.

*In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 594, 520 P.3d 939 (2022) (citations omitted).[11] Because Carrasco is serving a long-final mandatory de facto LWOP sentence, he is entitled to the same Eighth Amendment protections of the substantive rule prohibiting mandatory adult sentences on juveniles who lack adult culpability whether he alleges a *Miller* violation or a *Houston-Sconiers* violation.

Carrasco also argues that under *Ali*, .730 is an inadequate remedy for a *Houston-Sconiers* violation. Suppl. Br. of Pet'r at 24 ("In *Matter of Ali*, this Court held that, 'while RCW 9.94A.730 might provide an adequate remedy for a *Miller* violation, it *may* be grossly inadequate *under the circumstances* of a *Houston-Sconiers* violation.'" (emphasis added) (quoting *Ali*, 196 Wn.2d at 246)). Contrary

---

[11] Because *Houston-Sconiers* broadened the types of punishments subject to this substantive rule, .730 will not be an adequate remedy for every *Houston-Sconiers* violation. As explained in detail below, *Ali* and *Domingo-Cornelio* provide two examples of circumstances under which .730 was inadequate. However, consistent with *Scott*, .730 is an adequate remedy for a *Houston-Sconiers* violation where the petitioner is serving a long-final de facto LWOP sentence.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to Carrasco's assertion, *Ali* did not hold that .730 is an inadequate remedy for all *Houston-Sconiers* violations. Our comments in *Ali* confirmed that .730 will provide an adequate remedy for a *Houston-Sconiers* violation in cases such as Carrasco's where the petitioner is serving an exceptionally lengthy sentence. In *Ali*, we cited *Scott*, recognizing that .730 is an adequate remedy for long-final life sentences and de facto life sentences. *Ali*, 196 Wn.2d at 246 n.7. We also highlighted that *Miller*, as interpreted by Washington case law before *Houston-Sconiers*, was limited to life sentences and de facto life sentences, whereas *Houston-Sconiers* applies to any adult standard sentence imposed on a juvenile. Because we broadened the *scope* of these Eighth Amendment protections, we made the logical observation that "RCW 9.94A.730 cannot provide an adequate remedy *under all circumstances*." *Ali*, 196 Wn.2d at 246 (emphasis added). *Ali* and *Domingo-Cornelio* provide examples of circumstances where .730 was not adequate. But Carrasco's circumstances are not akin to the circumstances of the petitioners in those cases.

In *Ali* and *Domingo-Cornelio*, we concluded .730 was not an adequate remedy based on the length of the petitioners' sentences. In Ali's case, .730 was inadequate because he would have had to serve over 75 percent of his 26-year sentence before becoming eligible for early release. For Domingo-Cornelio, .730 provided no remedy at all because he would have had to serve the entirety of his

12

*In re the Personal Restraint of Carrasco*, No. 100073-1

20-year sentence. This court reasoned that *under those particular circumstances*, .730 was inadequate based on the petitioners likely serving all or nearly all their sentence before becoming eligible for the remedy. *Ali*, 196 Wn.2d at 245-46. That is not the case here where Carrasco is serving a de facto life sentence and will be entitled to seek early release after serving about 20 percent of his overall sentence.

In addition to arguing that the possibility of parole under .730 is an inadequate remedy for a *Houston-Sconiers* violation under the Eighth Amendment, Carrasco makes a similar argument relying on article I, section 14 of the Washington Constitution. For support, he cites *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980), and the concurrence in *Scott* to argue he is entitled to a resentencing hearing despite his eligibility to petition for early release under .730.

Carrasco does not explain how article I, section 14 is more protective than the Eighth Amendment in this particular context. Citing the *Scott* concurrence, he claims *Fain* held that the possibility of parole is not akin to a real resentencing under our state constitution. *Scott*, 190 Wn.2d at 605 (Gordon McCloud, J., concurring). Therefore, in Carrasco's view, this court has already determined that article I, section 14 requires the remedy of a resentencing hearing even when the offender has the possibility of parole. This reading of *Fain* broadens its holding far beyond what we actually decided. *Fain* did not hold that the possibility of parole failed to remedy a life sentence that was unconstitutionally disproportionate to the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

underlying offenses under article I, section 14. Rather, we concluded that the opportunity for parole under the particular statute did not convert Fain's life sentence into a less-than-life sentence for purposes of analyzing Fain's proportionality claim under our state constitution. Also, the pre-SRA parole scheme at issue in *Fain* is significantly different from the early release statute here. In sum, *Fain* did not hold that the possibility of parole cannot be considered akin to resentencing under our state constitution and does not control our assessment of the adequacy of .730 as a remedy to Carrasco's exceptionally lengthy sentence.

In arguing that .730 is an inadequate remedy under the state constitution, Carrasco indirectly argues that article I, section 14 requires a resentencing hearing for juveniles serving long-final exceptionally lengthy sentences imposed without consideration of the dual mandates of *Houston-Sconiers*. The Eighth Amendment does not require a resentencing hearing under these circumstances, and none of our cases support that state constitutional argument.

Further, Carrasco does not identify a substantive state constitutional right that invalidates his sentence. The constitutional error that Carrasco alleges in this PRP is a procedural one. He asserts that the sentencing court did not follow the procedural requirements of *Houston-Sconiers*, i.e., the dual mandates. *Houston-Sconiers*, in interpreting *Miller*, identified the substantive *federal* constitutional right that the imposition of adult standard SRA ranges and/or enhancements is a

14

*In re the Personal Restraint of Carrasco*, No. 100073-1

disproportionate punishment for *juveniles with diminished culpability*. *Ali*, 196 Wn.2d at 232. The dual mandate of *Houston-Sconiers*—that sentencing courts consider mitigating qualities of youth and appreciate their discretion to depart from the standard ranges—is a "'necessary [procedural rule] to implement [the] substantive guarantee'" of *Houston-Sconiers*. *Ali*, 196 Wn.2d at 240 (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 210, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)). But that procedural rule "'regulate[s] only the *manner of determining* the defendant's culpability.'" *Ali*, 196 Wn.2d at 240 (alteration in original) (quoting *Montgomery*, 577 U.S. at 210). A violation of that procedural right does not lead to the conclusion that Carrasco is serving an unconstitutional sentence under the Eighth Amendment, and Carrasco does not identify an independent state constitutional basis to conclude differently. Further, Carrasco does not argue that his substantive constitutional rights—under either the state or federal constitutions—were violated. Specifically, Carrasco does not argue that he is a "juvenile with diminished culpability" serving a disproportionate adult standard SRA range sentence. He also does not show that his sentence is categorically unconstitutional applied generally to all juveniles. Therefore, this argument fails.

We affirm the Court of Appeals.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Johnson, J.

WE CONCUR:

_____     _____

_____     _____
Madsen, J.

_____
Owens, J.

_____     _____
Stephens, J.                Maxa, J.P.T.

*In re Pers. Restraint of Carrasco* (*Eric Ramos*), No. 100073-1
(Gordon McCloud, J., concurring)

No. 100073-1

GORDON McCLOUD, J. (concurring)—I agree with the majority's

conclusion that we must deny Eric Carrasco Ramos's personal restraint petition

(PRP) because he has an adequate, alternative remedy. I write separately because I

do not agree with all of the majority's reasoning.

Instead, I believe our precedent now establishes the following rules: (1) that

as the concurrence in dissent states at 2, under *State v. Houston-Sconiers*, 188

Wn.2d 1, 391 P.3d 409 (2017), "a judge imposing sentence on a person for a crime

committed as a juvenile must meaningfully consider the mitigating qualities of

youth and must have discretion to make a downward departure" from otherwise

mandatory sentencing requirements, (2) that as the concurrence in dissent also

states at 2, under *In re Personal Restraint of Ali*, 196 Wn.2d 220, 237, 474 P.3d

507 (2020), those dual mandates apply retroactively on collateral review, (3) that

under *In re Personal Restraint of Williams*, 200 Wn.2d 622, 631, 520 P.3d 933

(2022), those dual mandates still apply retroactively on collateral review but in

fewer circumstances: "The dual mandates are clearly procedural as they do not

place any law or punishment beyond the State's power to impose. Thus, any

1

*In re Pers. Restraint of Carrasco* (*Eric Ramos*), No. 100073-1
(Gordon McCloud, J., concurring)

application of *Houston-Sconiers'* procedural elements to an indeterminate sentence

must be tied to the substantive rule prohibiting adult standard SRA[1] ranges and

enhancements that would be disproportionate punishment for juveniles who

possess diminished capacity.", and (4) that under *State v. Scott*, 190 Wn.2d 586,

416 P.3d 1182 (2018), RCW 9.94A.730's provision for Indeterminate Sentence

Review Board review of certain lengthy sentences after 20 years may provide an

adequate available remedy, RAP 16.4(d), that bars criminal defendants who

suffered from *Houston-Sconiers* type errors that resulted in de facto life sentences

from using the PRP procedure for relief.

I would not overrule those recent cases or discard those recent rules.

For that reason, I agree with the dissent that Carrasco has established a

violation of *Houston-Sconiers'* "dual mandate" procedural protections. I agree

with the dissent that those *Houston-Sconiers* procedural protections apply

retroactively to Carrasco because they are so tied to the "substantive rule"

prohibiting adult standard SRA ranges and enhancements that would

disproportionately punish "juveniles who possess diminished capacity." I further

agree with the dissent that Carrasco has established prejudice, as we defined

prejudice in *In re Personal Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 268,

---

[1] Sentencing Reform Act of 1981, ch. 9.94A RCW.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Carrasco* (*Eric Ramos*), No. 100073-1
(Gordon McCloud, J., concurring)

474 P.3d 524 (2020). And I would not disturb that precedent's requirement of prejudice or its definition of prejudice.

But *Scott* bars relief. As I mentioned above, *Scott* holds that RCW 9.94A.730 generally provides an adequate alternative remedy for those who suffered from *Houston-Sconiers* type errors that resulted in de facto life sentences. Carrasco does not ask us to overrule *Scott*. After *Scott* was decided, we further clarified that the petitioner at such RCW 9.94A.730 hearings benefits from a "statutorily mandated presumption of release." Majority at 7 (citing *In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 841, 502 P.3d 349 (2022)). Carrasco received a sentence of 93 years. That is a de facto life sentence. Under our controlling precedent, RCW 9.94A.730 provides him with a hearing after he has served 20 years at which he will be entitled to a presumption of release. Under *Scott*, that is an adequate alternative remedy.

I therefore respectfully concur.

_____
Gordon McCloud, J.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100073-1

WHITENER, J. (dissenting)— Erik Carrasco Ramos was sentenced to almost 94 years in prison without the trial court judge considering his youth at the time of the crime. At the time of sentencing, the trial court judge did not have the benefit of the dual mandate set forth in *Houston-Sconiers*,[1] a decision this court held is a significant change in the law that applies retroactively. Trial courts *must* consider youth when sentencing juveniles, even when those juveniles are sentenced as adults, and we should remand to ensure that happens in this case.

It is not disputed that Carrasco "is serving a 93-year sentence imposed without any consideration of his youth." Majority at 1. The majority concludes, however, that based on the lengthiness of Carrasco's sentence, his personal restraint petition (PRP) must be dismissed because he has an adequate remedy in the form of eligibility for early release under RCW 9.94A.730. Majority at 1-2, 9-10. I acknowledge, in line with the majority's position, that Carrasco's PRP appears to fall squarely within the factual underpinnings of *State v. Scott*, 190 Wn.2d 586, 416 P.3d 1182 (2018). However, I cannot agree that this similarity is determinative of the case before us because *Scott* was decided before we held that *Houston-Sconiers*

---

[1] *State v. Houston-Sconiers,* 188 Wn.2d 1, 391 P.3d 409 (2017).

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

was a significant change in the law with retroactive effect. Although both deal with juvenile rights under the Eighth Amendment, a *Miller*[2] violation and a *Houston-Sconiers* violation are not one and the same. *See* majority at 7-8. The distinction in scope between the violations, discussed further in Section I.A, *infra*, makes evident that while early release eligibility corrects a *Miller* violation, it is not an adequate remedy for a *Houston-Sconiers* violation.

Therefore, I respectfully dissent. I would grant Carrasco's PRP and remand for resentencing because Carrasco has established that he was prejudiced by the sentencing court's failure to comply with the dual mandate of *Houston-Sconiers*.

ANALYSIS

I.    Carrasco's petition should not be dismissed because eligibility for early release under RCW 9.94A.730 is not an adequate remedy for a *Houston-Sconiers* violation

A. A *Houston-Sconiers* violation differs from a *Miller* violation

Although both *Miller* and *Houston-Sconiers* addressed juvenile rights under the Eighth Amendment, there is a critical distinction between a *Miller* violation and a *Houston-Sconiers* violation.[3] *Miller* prohibited mandatory life without parole (LWOP) for defendants who committed their crimes as juveniles. 567 U.S. at 479. Because "children are different" from adults—namely, they are generally more

---

[2] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).
[3] We touched on this fleetingly in *In re Personal Restraint of Ali*, 196 Wn.2d 220, 245, 474 P.3d 507 (2020), when we noted eligibility for early release, while adequate to remedy a *Miller* violation, "does not necessarily provide a remedy to a *Houston-Sconiers* violation."

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

immature, reckless, and impetuous, and thus less blameworthy—the Supreme Court reasoned that "making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence . . . poses too great a risk of disproportionate punishment." *Id*. at 472, 479, 481. In *Houston-Sconiers*, we applied *Miller*'s reasoning in the context of a determinate sentence based on the Supreme Court's recognition that "'children are different' under the Eighth Amendment" and so all "'criminal procedure laws' must take the defendants' youthfulness into account." 188 Wn.2d at 9. We appropriately recognized that the Eighth Amendment's prohibition of cruel and unusual punishment was not restricted to the context of mandatory LWOP[4] and extended *Miller*'s reasoning to hold that sentencing courts must consider youth as a mitigating factor and understand that they have discretion to depart from mandatory sentencing schemes whenever sentencing a defendant for crimes they committed as a juvenile. *Id*. at 21 (requiring adherence to dual mandate when sentencing "any juvenile defendant" in criminal court); *see In re Pers.*

---

[4] The Eighth Amendment bars any punishment that is grossly disproportionate to the defendant's crime; its protections have not been limited to prevent only those punishments we have deemed to be the most severe, such as the death penalty or LWOP. *See Weems v. United States*, 217 U.S. 349, 368, 30 S. Ct. 544, 54 L. Ed. 793 (1910) (explaining "[w]hat constitutes a cruel and unusual punishment has not been exactly decided" and acknowledging even a sentence for a term of years may be grossly disproportionate under certain circumstances); *see also Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (holding courts must perform fact-specific comparison of gravity of offense and severity of punishment); *Solem v. Helm*, 463 U.S. 277, 287-90, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) (discussing circumstances where a term of imprisonment, even relatively short or intermediate in length, could be grossly disproportionate to a crime).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Restraint of Ali*, 196 Wn.2d 220, 245-46, 474 P.3d 507 (2020) ("*Houston-Sconiers* applies to all juveniles sentenced as adults under the SRA [(Sentencing Reform Act of 1981, ch. 9.94A RCW)], including those who received far less than life sentences.").

Whereas a *Miller* violation necessarily involves a mandatory LWOP sentence—in other words, categorical denial of a meaningful opportunity for release through parole without consideration of youth as a mitigating factor—a *Houston-Sconiers* violation does not. Instead, a *Houston-Sconiers* violation may involve mandatory LWOP (in which case it would *also* be a *Miller* violation) or it may involve some other lesser sentence, such as a standard adult range determinate sentence with mandatory enhancements. *See Houston-Sconiers*, 188 Wn.2d at 13 (determinate sentence of 372 months); *see also Ali*, 196 Wn.2d at 228 (determinate sentence of 312 months); *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 261, 474 P.3d 524 (2020) (determinate sentence of 240 months plus 36 months of community custody supervision). The crux of a *Houston-Sconiers* violation, therefore, is not the automatic denial of parole, it is the sentencing court's failure to ensure a punishment is proportionate (and thus constitutional) by meaningfully considering youth and understanding its absolute discretion to depart from mandatory punishments prescribed by the SRA at the time of sentencing, should the court find that the defendant's youth mitigates their culpability and warrants an

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

exceptional downward sentence. 188 Wn.2d at 9. When courts fail to adhere to the dual mandate of *Houston-Sconiers*, we lack any assurances that the sentence imposed on a juvenile offender comports with their Eighth Amendment right to be free from disproportionate punishment. *See Domingo-Cornelio*, 196 Wn.2d at 268 ("Unless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile."). Thus, although we have held that the difference between a *Miller* violation and a *Houston-Sconiers* violation "is one of scope, not of kind," *Ali*, 196 Wn.2d at 241-42, this difference in scope addresses materially different constitutional concerns, which require different remedies. *Houston-Sconiers* applies to *any* adult standard sentence imposed on a juvenile and is not limited like *Miller*, so RCW 9.94A.730 cannot provide an adequate remedy under all circumstances. *Ali*, 196 Wn.2d at 245. This case is one such circumstance.

>   B. *Houston-Sconiers* announced a substantive rule and the procedural mechanism to enforce that rule, both of which are retroactive under *Ali* and *Domingo-Cornelio*

The majority concludes the dual mandates from *Houston-Sconiers* "are not retroactive and therefore do not apply on collateral review to a sentence that is long final." Majority at 9. I disagree.

We framed both *Ali* and *Domingo-Cornelio* as analyzing whether the dual mandates of *Houston-Sconiers* are retroactive. We ultimately concluded that they

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

are, and we then analyzed prejudice as whether the dual mandates had been satisfied at the trial court. Finding they had not, we remanded for resentencing because the trial courts had *not* complied with the dual mandates. The majority now overrules those cases without any explanation as to how these two cases are incorrect and harmful as required under stare decisis.

First, this court has already held that the dual mandates are "*necessary to effectuate*" the substantive rule that *Houston-Sconiers* announced and therefore those procedural dual mandates do apply retroactively. The *Ali* court explained that the dual mandates are the crucial mechanisms that trial courts must use in securing this constitutional right:

> Without the context of a defendant's youthfulness and the discretion to impose something less than what the SRA mandates, sentencing courts cannot protect juveniles' Eighth Amendment right to be free from unconstitutionally disproportionate punishment. The discretion and consideration that *Houston-Sconiers* requires are necessary to effectuate the substantive rule that certain punishments routinely imposed on adults are unconstitutional as applied to youth.

196 Wn.2d at 238. Our court stressed this point further in *Ali*'s sister case, *Domingo-Cornelio*. 196 Wn.2d at 266 (the dual mandates are "the mechanism necessary to effectuate th[e] substantive rule").

Second, when we analyzed the violations at issue in *Ali* and *Domingo-Cornelio*, the analysis does not concern whether a categorically prohibited disproportionate adult standard SRA range sentence was imposed on the juvenile

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

offender with diminished culpability. Instead, we analyzed *whether the trial court judge complied with the dual mandates of* Houston-Sconiers because there is no way to know if the sentence is unconstitutionally disproportionate unless the court followed the dual mandates.

In *Ali,* we reasoned,

> Ali's sentencing comported with only one of the two constitutional requirements we announced in *Houston-Sconiers*. The sentencing judge considered the mitigating factors of Ali's youth and arguments for an exceptional sentence, but because she did not have the discretion to impose any sentence below the standard SRA range and mandatory enhancements, she sentenced according to the SRA's mandates for adult sentencing. Based on the record, it appears that more likely than not, the judge would have imposed a lower sentence had she understood that the Eighth Amendment requires absolute discretion to impose any sentence below the standard range based on youthful diminished culpability. Since *Houston-Sconiers* applies retroactively, Ali was actually and substantially prejudiced by the sentencing court's (understandable) error.

196 Wn.2d at 244-45.

Further, in *Domingo-Cornelio*, we concluded that "a petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration." 196 Wn.2d at 268. We went on to analyze whether the trial court judge had complied with the dual mandates, ultimately concluding that "[m]ore likely than not, Domingo-Cornelio would have received a lesser sentence had the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court complied with the dual mandates of *Houston-Sconiers*." *Id* at 268-69. We remanded for resentencing because of this failure to follow the dual mandates. *Id*. at 269.

The dual mandates are retroactive on collateral attack, otherwise, there would be no reason for this court to mention the dual mandates in reference to the trial court's actions, much less decide the case on those grounds.

These are two recent, binding decisions that the majority now ignores in its attempt to limit the application of *Houston-Sconiers*. But our court is bound to follow a majority opinion unless that opinion has been shown to be incorrect and harmful— an analysis the majority fails to perform. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016) ("In order to effectuate the purposes of stare decisis, this court will reject its prior holdings only upon 'a clear showing that an established rule is incorrect and harmful.'" (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970))).

Further, the majority in *In re Personal Restraint of Williams* agrees that the dual mandates *are* retroactive, holding that "any application of *Houston-Sconiers*' procedural elements to an indeterminate sentence must be tied to the substantive rule prohibiting adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished capacity." *In re Personal Restraint of Williams*, 200 Wn.2d 622, 631, 520 P.3d 933 (2022).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Accordingly, *Williams* recognizes the retroactivity of the dual mandates so long as the issue is whether the sentence imposed was disproportionate punishment for juveniles who possess diminished capacity, as is the issue here.

The majority frames *Williams* as holding that the dual mandates of *Houston-Sconiers* are not retroactive. *See* majority at 5 n.6. However, the majority then quotes language from *Williams* that "'the procedural mandates that require courts to consider mitigating qualities of youth and to have discretion to impose sentences below the SRA are not *independently* retroactive on collateral review.'" *Id.* (quoting *Williams*, 200 Wn.2d at 632). This means that the dual mandates *are* retroactive on collateral review when tied to an adult SRA sentence that would be disproportionate punishment for a juvenile with diminished culpability. The only way to determine whether the punishment is disproportionate is through the dual mandates. Accordingly, the dual mandates are *never* independent from the underlying question when the determination is whether the punishment is proportionate, as is the question here. The majority is expanding the language in *Williams* far beyond what it actually holds and in doing so uses *Williams* to implicitly overrule *Ali* and *Domingo-Cornelio*.

To the contrary, *Ali* and *Domingo-Cornelio* are still controlling precedent and both of those decisions held that the dual mandates apply retroactively. Therefore, this binding precedent guides my analysis.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

C. Our decision in *Scott* should not be deemed controlling

After Carrasco serves 20 years of his sentence, he will become eligible to petition the Indeterminate Sentence Review Board (ISRB) for early release under RCW 9.94A.730. The majority concludes that this is an adequate remedy according to our decision in *Scott*, 190 Wn.2d at 588, wherein we held "that RCW 9.94A.730's parole provision is an adequate remedy for a *Miller* violation, rendering unnecessary the resentencing of a defendant who long ago received a de facto life sentence as a juvenile." *See* majority at 10-11. I cannot agree that *Scott* is determinative of the case before us. I acknowledge that the sentence Carrasco received parallels the de facto life sentence imposed on the defendant in *Scott*, but the parallel ends there. *Scott* failed to appreciate the distinction between a *Miller* violation and a *Houston-Sconiers* violation, discussed above. Majority at 8; *Ali*, 196 Wn.2d at 233-34 ("*Houston-Sconiers* represents a significant change in the law because it *requires* the sentencing court to consider the youthfulness of the defendant."). For these reasons, developed further below, I would hold that *Scott* is "incorrect and harmful" and that we are therefore, not compelled to follow it under the principle of stare decisis. *Waters of Stranger Creek*, 77 Wn.2d at 653 (stability offered by stare decisis "should not be confused with perpetuity"). "If the law is to have a current relevance,

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

courts must have and exert the capacity to change a rule of law when reason so requires." *Id*. Reason so requires in this case.

In *Scott*, this court held that RCW 9.94A.730 was an adequate remedy for a *Miller* violation because it offered juvenile offenders "'*some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation*.'" *Scott*, 190 Wn.2d at 594  (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479). Although Scott argued that he was also entitled to resentencing under *Houston-Sconiers*, this court distinguished *Houston-Sconiers* on the grounds that it was limited to appeals that were "not yet final" and that it had "acknowledged that the Supreme Court had approved a postsentencing *Miller* fix of *extending parole eligibility* to juveniles as a remedy where an offending juvenile conviction and sentence are 'long final.'" *Id.* at 595 (quoting *Houston-Sconiers*, 188 Wn.2d at 20). This reasoning was implicitly overruled in 2020 when this court held that *Houston-Sconiers* was a significant change in the law that must apply retroactively. *See Ali*, 196 Wn.2d at 226, 233-34; *Domingo-Cornelio*, 196 Wn.2d at 262, 265-66; *cf. In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 312-13, 440 P.3d 978 (2019) (deciding appeal on issue of prejudice and declining to reach question of retroactivity of *Houston-Sconiers*). Because *Houston-Sconiers* has retroactive effect, it necessarily applies to all appeals—provided it is material to the issues raised—including those that became final long ago. *See Ali*, 196 Wn.2d at 226, 233-34.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Scott* is incorrect for two reasons. First, to the extent it suggests there is a time limitation to be eligible for resentencing under *Houston-Sconiers. Ali*, 196 Wn.2d at 226, 233-34; *see State v. Barber*, 170 Wn.2d 854, 864, 248 P.3d 494 (2011) (decision may be incorrect if inconsistent with precedent, constitution or statutes, policy concerns, or "if it relies on authority to support a proposition that the authority itself does not actually support"). Second, *Scott*'s minimal discussion of *Houston-Sconiers* appears to be premised on the now incorrect assumption that the dual mandates only apply to sentences not yet final on direct review. *See Scott*, 190 Wn.2d at 595. Thus, this court was not able to adequately address whether RCW 9.94A.730 remedies a *Houston-Sconiers* violation because this court had not yet held that the dual mandates of *Houston-Sconiers* are retroactive. Accordingly, *Scott* is incorrect because it is no longer consistent with this court's precedent insomuch as it suggests that RCW 9.94A.730 is an adequate remedy when a juvenile has been sentenced to a de facto life sentence without consideration of whether the trial court adhered to the dual mandates of *Houston-Sconiers*.

*Scott* is also harmful as it is inconsistent with growing public policy concerns that juveniles must be (or should have been, in cases that became final before *Houston-Sconiers*) given special protections at the time of sentencing in criminal court. *See Barber*, 170 Wn.2d at 865 (discussing harmful cases where "the common thread was the decision's detrimental impact on the public interest"). Several

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Supreme Court cases discuss our society's deep-seated concern that children cannot and should not be assessed and punished the same as adults because children typically possess diminished culpability by virtue of their immature mental and emotional development. *See Miller*, 567 U.S. at 471-80 (discussing how characteristics of youth generally show reduced culpability and increased aptitude for reform and thus warrant individualized consideration before imposing most severe punishments (citing *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005))). Our cases have followed suit, emphasizing that all juveniles—not just those convicted of homicide—must receive individualized consideration of their youth as a mitigating factor at the time of sentencing to ensure against disproportionate punishment. *See Ali*, 196 Wn.2d at 232, 245; *Domingo-Cornelio*, 196 Wn.2d at 268; *Houston-Sconiers*, 188 Wn.2d at 21; *see also Meippen*, 193 Wn.2d at 321 (Wiggins, J., dissenting) (noting dual mandate of *Houston-Sconiers* "prevents children from facing disproportionate sentencing ranges in violation of the Eighth Amendment").

*Scott*'s holding that certain defendants should not have the opportunity to rectify a constitutionally defective sentence simply because their judgment and sentence became final too long ago undermines these public policy concerns and prevents courts from adhering to precedent requiring that all juveniles must be

13

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

accorded the same protections under *Houston-Sconiers*. *See Ali*, 196 Wn.2d at 232, 245; *Domingo-Cornelio*, 196 Wn.2d at 268; *Houston-Sconiers*, 188 Wn.2d at 21. We should expressly abrogate Scott to the extent it did not apply *Houston-Sconiers* retroactively and therefore did not consider whether RCW 9.94A.730 is an adequate remedy for a *Houston-Sconiers* violation but, instead, only that RCW 9.94A.730 is an adequate remedy for a *Miller* violation.

       D. Early release eligibility is not an adequate remedy for a *Houston-Sconiers* violation

In response to *Miller*, our legislature enacted RCW 9.94A.730 to provide that most juveniles who were sentenced in adult criminal court would have the opportunity to petition for early release after serving 20 years of their sentence. *See State v. Haag*, 198 Wn.2d 309, 331 n.7, 495 P.3d 241 (2021) (Stephens, J., concurring in part, dissenting in part). Eligibility under this statute has been deemed an adequate remedy for a *Miller* violation, which, as discussed above, involves the imposition of a mandatory LWOP sentence without considering whether an exceptional downward sentence is warranted based on a juvenile offender's youth. *Scott*, 190 Wn.2d at 588; *see Montgomery v. Louisiana*, 577 U.S. 190, 212, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016) ("A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."). Practically speaking, RCW 9.94A.730 has rendered *Miller* violations a relic of the past in Washington because most juvenile homicide

14

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

offenders[5] are now effectively serving indeterminate sentences with a 20-year minimum term. *See Montgomery*, 577 U.S. at 212; *see also Haag*, 198 Wn.2d at 331 n.7 (Stephens, J., concurring in part, dissenting in part); *In re Pers. Restraint of Hinton*, No. 98135-3, slip op. at 17-18 (Wash. Mar. 9, 2023) (majority of Stephens, J.). However, "*Houston-Sconiers* identified a *category* of sentences that are beyond courts' authority to impose: *adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles with diminished culpability.*" *Ali*, 196 Wn.2d at 232. This category of sentences, which may involve *any* disproportionate punishment, not solely the denial of parole, requires a different remedy tailored to the actual violation. RCW 9.94A.730 resolves a *Miller* violation but does not also resolve a *Houston-Sconiers* violation. *See id.*

*Houston-Sconiers* requires individualized consideration of a juvenile offender's youth at the time of sentencing to ensure the court imposes a punishment that is commensurate with the offender's culpability at the time they committed their crime(s). *See id*. RCW 9.94A.730 does not satisfy this mandate. Should Carrasco file a petition under RCW 9.94A.730, he will enjoy a presumption of release that remains subject to the ISRB's discretion and its forward-looking assessment of his risk of reoffending. RCW 9.94A.730(3) (ISRB must "give public safety

---

[5] Juveniles convicted of aggravated first degree murder are ineligible for parole under RCW 9.94A.730(1). Such offenders are subject to the terms of punishment and eligibility for early release provided in RCW 10.95.030(3).

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

considerations the highest priority when making all discretionary decisions regarding the ability for release and conditions of release"); *see In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 839, 502 P.3d 349 (2022) (public safety concerns are the ISRB's "highest priority" when considering a petition for parole); *Ali*, 196 Wn.2d at 245 ("The assessment at this stage is not whether the person possessed adult culpability at the time of the crimes but whether they pose a continued danger after 20 years of incarceration."). The ISRB's assessment of the risk Carrasco poses to the public 20 years after his crimes—which necessarily is based on his conduct while incarcerated and exposed to atypical living conditions and social stresses, *see Dodge*, 198 Wn.2d at 833-34—in no way equates to a meaningful consideration of his culpability when he was a 17-year-old juvenile offender. *See Scott*, 190 Wn.2d at 594 (holding RCW 9.94A.730 offers juvenile offenders "'some meaningful opportunity to obtain release *based on demonstrated maturity and rehabilitation*'" (emphasis added) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479)).

I agree with the majority that RCW 9.94A.730 creates a mechanism for early release, with a statutorily mandated presumption of release through the ISRB after serving at least 20 years, for juveniles sentenced to lengthy terms. RCW 9.94A.730(1); *Dodge*, 198 Wn.2d at 838-39. However, the possibility of discretionary release—which necessarily entails continued submission to the ISRB's

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

authority—cannot justify denying petitioners the opportunity to rectify a constitutionally defective sentence. The possibility remains that petitioners like Carrasco might have received lesser sentences had the sentencing court complied with the dual mandate of *Houston-Sconiers*.

Under *Houston-Sconiers*, petitioners like Carrasco might have been sentenced to a lesser term,[6] and while they would remain subject to the ISRB's authority it would conceivably be for a shorter duration of time, whether in confinement or community custody. Because of this possibility, it is evident that early release eligibility alone—which entails continued submission to the ISRB and the possibility of return to incarceration, RCW 9.94A.730(5), (7)—cannot adequately remedy a sentence that was unconstitutionally imposed in the first place. *State v. Ramos*, 187 Wn.2d 420, 436, 387 P.3d 650 (2017) ("The possibility of another remedy in the future cannot displace [a defendant's] right to appeal his sentence on the basis that it was unlawfully imposed in the first instance.").

Accordingly, I would hold that RCW 9.94A.730 is an inadequate remedy in all cases where a violation of the dual mandate of *Houston-Sconiers* has occurred.

---

[6] I will presume that Carrasco would remain under the ISRB's authority under RCW 9.94A.730 because, given the number of convictions, enhancements, and aggravating factors that led to an extremely lengthy sentence, it seems likely a sentence that complies with *Houston-Sconiers* would still exceed 20 years.

17

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

    II.     Carrasco is entitled to resentencing consistent with *Houston-Sconiers*

In PRPs based on the retroactive application of *Houston-Sconiers*, whether petitioners can prove actual and substantial prejudice is challenging and the issues are imprecise. Under the existing prejudice standard applicable on collateral review, to obtain a resentencing hearing Carrasco must show by a preponderance of the evidence that he was actually and substantially prejudiced by the sentencing court's failure to comply with the dual mandate of *Houston-Sconiers*. *Meippen*, 193 Wn.2d at 316. This requires "show[ing] some practical effect caused by [the] claimed error," namely, that Carrasco more likely than not would have received a shorter sentence but for the error. *State v. Buckman*, 190 Wn.2d 51, 61, 68, 409 P.3d 193 (2018) ("constitutional error generally does not, on its own, constitute prejudice"; there must be some "defect of substance"); *see also Domingo-Cornelio*, 196 Wn.2d at 268; *Meippen*, 193 Wn.2d at 316-17. The heightened standard of actual and substantial prejudice applicable in PRPs aligns with the long-recognized principle that collateral challenges are "not to operate as a substitute for a direct appeal." *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992) (heightened standard justified because collateral attack generally "undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders"); *see State v. Delbosque*,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

195 Wn.2d 106, 129, 456 P.3d 806 (2020) ("a PRP does not, and is not meant to, afford the same protections as an appeal").

In Carrasco's case there is very little in the record that would shed any light on the sentencing court's willingness to impose a lesser sentence based on Carrasco's youthful characteristics, and it appears Carrasco would fail to meet his burden to prove actual and substantial prejudice by a preponderance of the evidence. This silence is expected because Carrasco was sentenced approximately eight years before *Houston-Sconiers* was held to be a significant change in the law; at the time of his sentencing, the basis for Carrasco's argument was not legally tenable and the court had no reason to believe it had to meaningfully consider his youth or that it had absolute discretion to depart from the SRA. We cannot infer, nor should we, either a willingness or unwillingness to impose a lesser sentence based on the court's silence on the issue of youth and discretion to impose an exceptional downward sentence. *See Domingo-Cornelio*, 196 Wn.2d at 268 ("silence does not constitute reasoning"). As a matter of fundamental fairness and fidelity to evolving public policy that mandates stronger protections for juveniles in adult criminal court, this result is unacceptable.

One foundational assumption underlying our heightened prejudice standard is "'that the petitioner has already had an opportunity for judicial review.'" *Meippen*, 193 Wn.2d at 315 (quoting *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

P.3d 390 (2004)). Carrasco had no such opportunity as he did not have the benefit

of *Houston-Sconiers* at the time of his sentencing. Further, our existing standard

places a colossal burden on petitioners like Carrasco to prove what a sentencing

court likely would have done based on a then purely hypothetical argument and

within a legal framework that did not exist. A practical impossibility.

It is illogical to require petitioners to meet a higher standard of prejudice

simply because they were sentenced before courts had more meaningfully weighed

in on the issue of juvenile rights.[7]  The record here simply provides no assurances

that the sentencing complied with Carrasco's constitutional rights and that his

punishment was, therefore, a reliable result. *Domingo-Cornelio*, 196 Wn.2d at 268.

Given our particular concern with protecting juvenile offenders' Eighth Amendment

rights and our recognition that special protections like the dual mandate of *Houston-*

*Sconiers* must be given retroactive effect (essentially to rectify past constitutional

violations), we should adopt a narrow exception to the actual and substantial

---

[7] If Carrasco had the benefit of the dual mandate of *Houston-Sconiers* during the time allotted for direct appeal, he would have had to only show error to justify a resentencing hearing. 188 Wn.2d at 23 (remand for resentencing required where sentencing judge failed to consider youth or understand discretion to depart from applicable adult standard sentences). The State would then have borne the burden of proving that the error was harmless beyond a reasonable doubt. *Delbosque*, 195 Wn.2d at 129. However, because Carrasco was sentenced in 2012, he now faces a much higher burden of proving error *and* actual and substantial prejudice. This calls into question whether *Houston-Sconiers*—which demands resentencing if judges fail to comply with the dual mandate—would truly be given full retroactive effect if courts also impose an additional hurdle (i.e., proving the likelihood of a shorter sentence) on those unfortunate defendants whose sentences became final before the bench had fully weighed in on the protections necessary to prevent violations of juveniles' Eighth Amendment rights.

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prejudice standard: a per se prejudice standard, for the limited purpose of reviewing collateral challenges based on the retroactive application of *Houston-Sconiers* in cases where defendants were sentenced in criminal court for crime(s) they committed as juveniles.

A restricted per se prejudice rule does not unreasonably undercut the principles we have cited as justifying the heightened actual and substantial prejudice standard. *See St. Pierre*, 118 Wn.2d at 329 (collateral attack "undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders"); *Meippen*, 193 Wn.2d at 315 (citing "'the court's interest in finality, economy, and integrity of the trial process and by the fact that the petitioner has already had an opportunity for judicial review'" (quoting *Isadore*, 151 Wn.2d at 298)). First, petitioners like Carrasco would not be able to reverse their convictions, they could only potentially alter the severity of their sentence so that it complies with their constitutional right to be free from cruel and unusual punishment. A resentencing hearing does not guarantee that a sentence will be altered, and petitioners assume the risk that they may be sentenced to the same or an even greater term of punishment if resentenced. Thus, society would not be deprived of its right to punish offenders in line with the Eighth Amendment. *See St. Pierre*, 118 Wn.2d at 329.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Second, we cannot justify a heightened standard of prejudice based on the premise that Carrasco, and petitioners like him, have already had a chance to meaningfully challenge the constitutionality of their sentences based on their youthful culpability because, as mentioned, petitioners like Carrasco have not "'already had an opportunity for judicial review.'" *Meippen*, 193 Wn.2d at 315 (quoting *Isadore*, 151 Wn.2d at 298). This limited group of petitioners was sentenced when the basis for their claim of error—a violation of the dual mandate of *Houston-Sconiers*—was not at all cognizable within the time allotted for direct review.

Third, all resentencing necessarily reopens litigation and consumes additional court resources; however, an unconstitutional sentence cannot be allowed to stand simply because of a general public interest in judicial economy and finality. *See Ali*, 196 Wn.2d at 233-34 (*Houston-Sconiers* was significant change in law that requires retroactive application).

I would, therefore, adopt a per se prejudice rule for the narrow purpose of considering PRPs based on the retroactive application of *Houston-Sconiers* in cases where a petitioner committed their offense as a juvenile and was sentenced in adult criminal court. Should a petitioner establish that the sentencing court satisfied *neither* prong of the dual mandate of *Houston-Sconiers*, they should be given a resentencing hearing because, in such cases, we would have no basis for concluding

22

*In re Personal Restraint of Carrasco*, No. 100073-1
Whitener, J., dissenting

that their sentence complied with the Eighth Amendment. *Domingo-Cornelio*, 196 Wn.2d at 268; *cf. Meippen*, 193 Wn.2d at 313, 316-17. Carrasco has met this burden and remand for resentencing is proper.

CONCLUSION

The crux of a *Houston-Sconiers* violation, like the one at issue in Carrasco's case, is a sentencing court's failure to ensure a punishment is proportionate based on an individualized assessment of a juvenile offender's culpability at the time they committed their crime(s). Whereas RCW 9.94A.730 offers petitioners a meaningful opportunity for release after they have served 20 years in confinement, release is granted at the discretion of the ISRB based on its forward-looking assessment of a petitioner's risk of recidivism, and petitioners remain subject to the authority of the ISRB for the duration of their original court-imposed term. This statute offers petitioners the precise opportunity they were denied in cases of a *Miller* violation, that is, automatic denial of parole without consideration of youth as a mitigating factor. It is therefore adequate where *Miller* violations are concerned. But, the possibility of discretionary release—which necessarily entails continued submission to the ISRB's authority—cannot justify denying petitioners the opportunity to rectify a constitutionally defective sentence. The possibility remains that petitioners like Carrasco may have received lesser sentences had the sentencing court complied with the dual mandate of *Houston-Sconiers*. Accordingly, I would hold that RCW

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

9.94A.730 is not an adequate remedy and that Carrasco's PRP should not be dismissed under RAP 16.4(d).

Further, the parties do not dispute that Carrasco's sentencing court failed to comply with the dual mandate of *Houston-Sconiers*. To give full effect to our decision in *Houston-Sconiers*, I would adopt a per se prejudice standard for the limited purpose of considering PRPs that are based on the retroactive application of *Houston-Sconiers* where a petitioner was sentenced in criminal court for crimes they committed as a juvenile. Therefore, I would hold that Carrasco has shown that he was prejudiced, and I would grant his PRP and remand for resentencing.

_____
Whitener, J.

_____
Yu, J.

*In re Pers. Restraint of Carrasco,* No. 100073-1
(González, C.J., concurring in dissent)

No. 100073-1

GONZÁLEZ, C.J. (concurring in dissent) — The United States Supreme Court has recognized that "children are different" and that that difference has constitutional implications. *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In so doing, the Court recognized that our constitutions do not allow us to treat people as necessarily irredeemable because of what they did as a child. *See id.* at 489. Instead, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.*

In the decade since *Miller*, both this court and our legislature have struggled with its meaning and the implications, if any, for our own state constitutional jurisprudence. *See* LAWS OF 2014, ch. 130, §§ 10-11 (codified at RCW 9.94A.730 and RCW 10.95.035); *see also State v. Anderson*, 200 Wn.2d 266, 269-70, 516 P.3d 1213 (2022); *State v. Haag*, 198 Wn.2d 309, 330, 495 P.3d 241 (2021); *State v. Bassett*, 192 Wn.2d 67, 73, 428 P.3d 343 (2018). The United States Supreme Court has arguably repudiated some of what we treated as binding law in our

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Carrasco,* No. 100073-1
(González, C.J., concurring in dissent)

earlier cases. But under our system, those cases are good law unless and until overturned by this court or the United States Supreme Court.

Under these cases, a judge imposing sentence on a person for a crime committed as juvenile must meaningfully considered the mitigating qualities of youth and must have discretion to make a downward departure from the otherwise mandatory sentencing guidelines. *State v. Houston-Sconiers*, 188 Wn.2d 1, 21, 391 P.3d 409 (2017). These "dual requirements" are not merely procedural; they are "a mechanism necessary to effectuate that substantive rule: sentencing courts must consider the mitigating qualities of youth and have discretion to impose sentences below what the SRA [(Sentencing Reform Act of 1981, ch. 9.94A RCW)] mandates." *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 237, 242, 474 P.3d 507 (2020) ("*Houston-Sconiers* announced a new substantive rule that must be applied retroactively"), *cert. denied*, 141 S. Ct. 1754 (2021). In *Ali*, we found that *Houston-Sconiers*'s dual mandates applied retroactively on collateral review. *Id.* at 236. We acknowledged that *Houston-Sconiers* has a procedural component, but "this does not render *Houston-Sconiers* procedural. Rather than merely establishing a manner of determining the defendants' culpability, *Houston-Sconiers* prohibits certain punishments when imposed without the consideration and discretion that the Eighth Amendment requires." *Id.* at 241. I disagree with the

2

*In re Pers. Restraint of Carrasco,* No. 100073-1
(González, C.J., concurring in dissent)

majority that the dual requirements of *Houston-Sconiers* are only procedural for

the purposes of this case. *See* majority at 15.[1]

Between *Houston-Sconiers* and *Ali* lies *State v. Scott*, 190 Wn.2d 586, 416

P.3d 1182 (2018). That case asked a different but closely related question—

whether RCW 9.94A.730 provided Jai'Mar Eli Scott, who was serving a de facto

life sentence, an adequate remedy for any *Miller* error. *Id.* at 594. Collateral relief

is not available to a person who has an adequate available remedy, RAP 16.4(d),

and RCW 9.94A.730 gave Scott an opportunity to seek parole after he had served

20 years in prison. As Scott had served sufficient time to be eligible to apply for

parole, we concluded he had an adequate remedy and dismissed his petition. *Scott*,

190 Wn.2d at 601. Whether Scott was entitled to relief under *Houston-Sconiers*

was not before us.

While section .730 provided Scott with an adequate remedy given the error

he pleaded, nothing in *Scott* suggests that it necessarily provides an adequate

remedy for all other juvenile sentencing errors. As we later explained:

> *Houston-Sconiers* applies to all juveniles sentenced as adults under the SRA,
> including those who received far less than life sentences. While RCW

---

[1] I recognize that we recently characterized the dual requirements of *Houston-Sconiers* as
procedural. *See In re Pers. Restraint of Williams*, 200 Wn.2d 622, 631, 520 P.3d 933 (2022).
But *Williams* concerned whether *Houston-Sconiers* applied to a 3-month-to-life indeterminate
sentence. *Id.* at 625. Whether *Houston-Sconiers* was substantive in the context of lengthy
determinate sentences was not before us. *Williams* did not overrule *Ali* or *Domingo-Cornelio*,
and they remain good law.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> 9.94A.730 might provide an adequate remedy for a *Miller* violation, it may
> be grossly inadequate under the circumstances of a *Houston-Sconiers*
> violation. . . . [I]n this case, the *Miller*-fix statute would still require Ali to
> serve most of the sentence imposed in violation of *Houston-Sconiers* before
> he could even be considered for early release. Although *Miller* is limited to
> life sentences and de facto life sentences, *Houston-Sconiers* applies to *any*
> adult standard sentence imposed on a juvenile, so RCW 9.94A.730 cannot
> provide an adequate remedy under all circumstances.

*Ali*, 196 Wn.2d at 245-46 (citation omitted). The majority is simply incorrect that

section .730 necessarily provides an adequate remedy for anyone serving a de facto

life sentence that was imposed in violation of the dual requirements of *Houston-*

*Sconiers.*

We made this crystal clear in *Ali*'s companion case, *Domingo-Cornelio*,

where we held "a petitioner establishes actual and substantial prejudice when a

sentencing court fails to consider mitigating factors relating to the youthfulness of

a juvenile tried as an adult and/or does not appreciate its discretion to impose any

exceptional sentence in light of that consideration." *In re Pers. Restraint of*

*Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020), *cert. denied*, 141 S.

Ct. 1753 (2021).

Ultimately before us today is whether RCW 9.94A.730 provides one person,

Erik Carrasco Ramos, with an adequate remedy precluding collateral relief. I

agree with the lead dissent that it does not. The trial judge did not consider the

mitigating qualities of youth and the trial court was unaware that it had the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Carrasco,* No. 100073-1
(González, C.J., concurring in dissent)

authority to make a downward departure from the sentencing guidelines given

Carrasco's youth at the time of the crime. This violated the dual mandates of

*Houston-Sconiers.* This case is substantially similar to *Domingo-Cornelio*, and I

see no reason to treat it differently. *See Domingo-Cornelio*, 196 Wn.2d at 268.

Like Domingo-Cornelio, Carrasco has established sufficient prejudice to warrant

relief.

Parole under the *Miller*-fix statute is not an adequate remedy for Carrasco

any more than it was for Said Omer Ali or Endy Domingo-Cornelio. All three

suffered from the same errors—the trial court did not consider the mitigating

qualities of their youth and did not appreciate that it had the power to make a

downward departure from the sentencing requirements. As the lead dissent

eloquently demonstrates, a parole hearing half a life later is not an adequate

remedy.

I write separately, however, because I do not agree that *State v. Scott* should

be overruled. Given the question presented, it was correctly decided. Whether

Scott himself was entitled to relief under *Ali* and *Domingo-Cornelio* is a question

that was not asked and was not answered. It may be that section .730 is an

adequate remedy for someone who is actually eligible for parole under it. As a

matter of fact, the more time that has passed since a child committed a crime, the

harder it is for the sentencing court to meaningfully evaluate whether the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Carrasco,* No. 100073-1
(González, C.J., concurring in dissent)

mitigating qualities of youth demand a lower sentence.  But, given that Carrasco is

not eligible for a parole hearing and will not (if ever) be for years, it is not an

adequate remedy for him.

With these observations, I respectfully concur in dissent.

González, C.J.